**IN THE CIRCUIT COURT FOR THE**
**NINTH JUDICIAL CIRCUIT IN AND FOR**
**OSCEOLA COUNTY, STATE OF FLORIDA**

**AMERIFACTORS FINANCIAL GROUP,**
**LLC**, a Louisiana Limited Liability Company,

CASE NO.:
CIVIL DIVISION

       Plaintiff,

**THE UNIVERSITY OF CHICAGO**,
Inc., a Foreign Not For Profit Corporation,

       Defendant.

_____/

**COMPLAINT**

    Plaintiff, **AMERIFACTORS FINANCIAL GROUP, LLC** ("AmeriFactors"), a Louisiana limited liability, company sues Defendant, **THE UNIVERSITY OF CHICAGO,** Inc., a Foreign Not For Profit Corporation ("UOC"), and alleges:

**GENERAL ALLEGATIONS**

    1.    This is an action for damages of more than $30,000.00, exclusive of interest and costs.

    2.    AmeriFactors is a Louisiana limited liability company with an office location in Osceola county, Florida, and which owns the Invoice (as defined herein below) that is the subject of this action.

    3.    UOC is a Foreign Not For Profit Corporation registered to do business with the State of Florida and with a Registered Agent in Tallahassee, Florida.

    4.    This Court has personal jurisdiction over UOC as UOC breached a contract in this state by failing to make payment in Osceola County Florida as required by the contract.

5.      Venue is proper in Osceola county Florida Osceola County, Florida, because the cause of action accrued in Osceola County, Florida.

6.      On or about July 9, 2021, AmeriFactors entered into a Factoring Agreement with Klein Construction, Ltd. ("Klein").  A copy of the Factoring Agreement is attached as **Exhibit A**.

7.      Klein and UOC had business transactions between them already existing at the time Klein entered into the Factoring Agreement.  These business transactions resulted in the unpaid Invoice 1903-14/Pay App. 14, attached as **Exhibit B** due from UOC (the "Invoice" or the "Account").

8.      After these business transactions, Klein sold and assigned to AmeriFactors the Invoice.

9.      AmeriFactors has retained the undersigned counsel and it is obligated to pay her a reasonable fee for her services.

10.     AmeriFactors is entitled to collect its reasonable fees pursuant to the verification and payment agreement (discussed below).

11.     All conditions precedent for bringing this action have been complied with, waived, or excused.

### COUNT I – BREACH OF CONTRACT

12.     AmeriFactors realleges the allegations contained in paragraphs 1 and 3 through 11 above.

13.     On or about August 27, 2021, UOC executed a "verification and payment agreement" by the terms of which UOC agreed to pay the Invoice in full without offset or defense. A copy of the verification and payment agreement executed by UOC is attached hereto as **Exhibit C**.

2

14.     After receipt of the verification and payment agreement executed by UOC, AmeriFactors acted in reliance upon the promise made by UOC, and purchased the Invoice identified in the verification and payment agreement.

15.     After the purchase, AmeriFactors sent UOC a general notice of assignment and specific notice assignment of Invoice 1903-14/Pay App. 14, confirming that AmeriFactors purchased the Invoice in reliance upon the verification and payment agreement executed by UOC. Copies of the notices of assignment sent by AmeriFactors to UOC are attached hereto as **Composite Exhibit D.**

16.     UOC breached the verification and payment agreement by failing and refusing to pay the Invoice due in the amount of $1,272,073.45 as agreed in the verification and payment agreement.

17.     As a direct and proximate result of UOC's breach, AmeriFactors suffered damages in the principal amount of $1,272,073.45.

WHEREFORE, AmeriFactors demands judgment for damages against **The University of Chicago, Inc.** in the amount of $1,272,073.45, plus prejudgment interest, attorneys' fees and costs.

## COUNT II - ACCOUNT STATED

18.     AmeriFactors re-alleges the allegations contained in paragraphs 1, and 3 through 17 above.

19.     Before the institution of this action, Klein provided materials and services to UOC.

20.     Klein and UOC agreed to the resulting balances.

21.     AmeriFactors rendered a statement of the resulting balance to UOC.  *See* again, Composite Exhibit D.

3

22.     UOC owes $1,272,073.45 that is due with interest, for the products and services provided by Klein to UOC.

23.     AmeriFactors purchased the Account owed by UOC and paid Klein good and valuable consideration for the debt owed by UOC.

24.     On or about August 27, 2021, AmeriFactors delivered a Notice of Assignment to UOC informing UOC that the Invoice had been purchased by AmeriFactors.  *See* Ex. D**.**

25.     AmeriFactors now owns UOC's debt and is entitled to be paid by UOC.

26.     AmeriFactors has demanded payment of $1,272,073.45 from UOC but UOC has failed or refused to comply with that demand.

WHEREFORE, AmeriFactors demands judgment for damages against **The University of Chicago, Inc.,** in the amount of $1,272,073.45, plus prejudgment interest, attorneys' fees and costs.

## COUNT III - OPEN ACCOUNT

27.     AmeriFactors re-alleges the allegations contained in paragraphs 1 and 3 through 26 above.

28.     AmeriFactors owns the Account.

29.     UOC has failed and refused to pay AmeriFactors as assignee for the products and/or services provided by Klein to UOC.

30.     UOC owes AmeriFactors $1,272,073.45, according to the account statement.  *See* Comp. Ex. D.

WHEREFORE, AmeriFactors demands judgment for damages against **The University of Chicago, Inc.,** in the amount of $1,272,073.45, plus prejudgment interest, attorneys' fees and costs.

## COUNT IV – PROMISSORY ESTOPPEL,
## (IN THE ALTERNATIVE TO COUNT I)

31.     AmeriFactors re-alleges the allegations contained in paragraphs 1 and 3 through 17 above.

32.     UOC knew or reasonably should have known that AmeriFactors would rely upon its promise to pay the Invoice as agreed in the verification and payment agreement without defense or claim.

33.     AmeriFactors reasonably relied upon the promise of UOC to pay the Invoice, and to direct payment as provided in the verification and payment agreement, without any dispute or claim.

34.     In reliance upon the promise made by UOC, AmeriFactors purchased the Invoice in the amount of $1,272,073.45 from Klein.

35.     AmeriFactors will unjustly suffer damages in the amount of $1,272,073.45 and will lose the benefit of its bargain if the promise made by UOC to pay the $1,272,073.45 Account is not enforced.

WHEREFORE, AmeriFactors demands judgment for damages against **The University of Chicago, Inc.** in the amount of $1,272,073.45, plus prejudgment interest, attorneys' fees and costs.

Submitted this 19th day of October, 2021

**AMERIFACTORS FINANCIAL GROUP, LLC**
**LAW DEPARTMENT**

By: /s/ *Angelica M. Fiorentino*
Angelica M. Fiorentino
Florida Bar No. 085886
1170 Celebration Boulevard, Suite 100
Celebration, Florida 34747
(Telephone) 407-566-1150
(Telecopier) 407-566-1250
Primary: afiorentino@amerifactors.com;
Secondary: ljones@amerifactors.com
*Attorney for AmeriFactors Financial Group, LLC*

# EXHIBIT A

# (Factoring Agreement)



**FACTORING AGREEMENT**

Date: <u>JULY 9, 2021</u>
Account No.: _____

Client:
**KLEIN CONSTRUCTION LTD.**
<u>15700 W. 103RD ST, SUITE 340</u>
<u>LEMONT, IL 60439</u>
E-mail Address: ████ ████KLEINCONSTRUCTION.NET
Phone: ████ **000** Fax: ████ **2225** Cell: ████ **4400**

THE FOLLOWING IS THE AGREEMENT UNDER WHICH AMERIFACTORS FINANCIAL GROUP, LLC, AGREES TO ACT AS YOUR EXCLUSIVE FACTOR.

This Factoring Agreement (this **"Agreement"**) is made this day by and between AMERIFACTORS FINANCIAL GROUP, LLC, a Louisiana limited liability company and wholly owned subsidiary of Gulf Coast Bank & Trust Company (together with its successors and assigns, referred to as **"we"** or **"us"** or **"AmeriFactors"**) and **KLEIN CONSTRUCTION LTD.** (referred to as **"you"**).

1. **Assignment.** You hereby sell and assign to us all of your right, title, and interest in and to all your Accounts (as defined below), whether now existing or that may hereafter arise, that are acceptable to us. Title and ownership of an Account will not vest in us and will remain with you until the date we accept the Account. **"Accounts"** means: (a) all of your accounts (as defined in the UCC) that are acceptable to us and all obligations owed to you arising from or out of the sale of merchandise or the rendition of services; (b) all of your rights to goods, property, and merchandise represented thereby (including without limitation returned and repossessed goods); (c) all of your rights under insurance policies covering the services or merchandise; (d) all of your rights against carriers of merchandise; (e) all of your defenses and rights of offset with respect to any payments received on an Account, and all other rights of an unpaid seller of services or merchandise; (f) all the rights of the seller of the underlying goods and services, including all rights of replevin, reclamation, stoppage in transit, supporting obligations, and letter of credit rights, and (via subrogation or otherwise) all bond claims, lien rights, guarantees, securities, security interests, other agreements and arrangements, and supporting obligations of whatever character held in regard to your dealings with your customers; and (g) all proceeds of the foregoing.

2. **Documents; Books and Records.** Upon our request (and as a condition to our purchase of an Account), you shall deliver to us a valid purchase order or contract and documentation sufficient to confirm your completion of services or the shipment of ordered materials covered by the Account. You promptly shall execute and deliver to us all shipping or delivery receipts and documents associated with each Account and all further and confirmatory assignments of your Accounts as we require in a form and manner satisfactory to us. Additionally, at any time and from time to time, at our request, you shall execute and deliver to us any document in further confirmation thereof. You shall maintain at all times and at your expense proper books of account. We have the right to inspect and make extracts from all your books and records at all reasonable times. You shall make appropriate notations on your books and ledgers indicating the sale and assignment to us of each Account.

3. **Invoices.** You shall bill and invoice all services and merchandise on a bill, form, or invoice satisfactory to us. All invoices to customers on Accounts assigned to us shall clearly state, in a manner satisfactory to us, that the Account has been sold and is payable only to us.

4. **Risk.** With respect to Accounts that are approved and accepted by us, we assume only the credit risk and are responsible only for the financial inability of your customers to pay. That assumption of credit risk will go into effect upon delivery and acceptance of the services and/or merchandise by your customers without dispute and our acceptance of the Account. We are not liable in any manner for refusing to give or withdrawing credit approval, for exercising or for refusing to exercise any rights we have under this Agreement, or for refusing to accept any particular Account or Account debtor.

5. **Initial Consideration.** Once we approve the purchase of an Account, we will immediately pay you ████ percent ████ of the invoice or accounts receivable at the time of the approval.

6. **Additional Conditional Consideration.** As additional conditional consideration for the sale of an Account, we will, upon receipt of collection, promptly pay to you an additional:

   ████ percent of the Net Sale Amount, if collected within <u>30</u> days from date sold; or
   ████ percent of the Net Sale Amount, if collected in <u>31</u> to <u>45</u> days from date sold; or
   ████ percent of the Net Sale Amount, if collected in <u>46</u> to <u>60</u> days from date sold; or
   ████ percent of the Net Sale Amount, if collected in <u>61</u> to <u>75</u> days from date sold; or
   ████ percent of the Net Sale Amount, if collected in <u>76</u> to <u>90</u> days from date sold; or
   ████ percent of the Net Sale Amount, if collected in <u>91</u> to <u>105</u> days from date sold; or
   ████ percent of the Net Sale Amount, if collected in <u>106</u> to <u>120</u> days from date sold; or
   ████ percent of the Net Sale Amount, if collected in <u>121</u> to <u>135</u> days from date sold; or
   ████ percent of the Net Sale Amount, if collected over <u>135</u> days from the date sold.

Initial: _WK_ Date: 8/18/21

If we collect less than the full amount of the Account, the additional conditional consideration otherwise payable pursuant to this paragraph is subject to any set-off taken by the Account debtor or otherwise compromised, not collected, or forgiven by us. If we collect only a portion of the Account and the uncollected portion of the Account exceeds the amount of the contingent part of the purchase price specified in this paragraph, then the excess of the uncollected portion will be set-off against and subtracted from any and all other additional conditional consideration that would otherwise be payable to you pursuant to this Agreement. For purposes of determining the number of elapsed days under this paragraph, the date of the "sale" will be counted as the first day and the date of collection will be deemed to be four banking days after the date a check or draft drawn on a Florida bank and ten banking days after the date a check or draft drawn on an out-of-state bank received from an Account debtor is deposited by us in our bank account. If we receive cash from an Account debtor, the date of collection will be the day on which we received the cash. A "draft drawn" includes, without limitation, ACH payments. If any checks are returned to us for insufficient funds or as a result of stop payment orders and if we have paid any amounts to you, then you shall return the payment to us upon our request. Additional conditional consideration owed by us to you will be paid on the **FRIDAY** following the date we received the cash payment on the Account or the expiration of the four-day or ten-day collection period, as applicable. A transaction fee of $50.00 will be charged according to the number of invoices processed during that given period. Non-factored reserve releases incur a processing fee of up to $25.00 per release.

7. **Volume.** You shall sell us ▮▮▮▮▮▮ your Accounts (except cash sales) generated between the date of this Agreement and **JULY 9, 2022**. During the term of this Agreement, we shall purchase, in the aggregate, ▮▮▮▮▮▮ of Accounts, subject to the other terms and conditions of this Agreement. You agree that we are entitled to recover damages if you fail to perform your Obligations under this paragraph regardless of whether or not you actually generate the required account volume. Damages will be computed by multiplying the amount by which you fall short of this volume requirement by the lowest percentage fee to be earned or retained by us as computed by reference to paragraphs 5 and 6 above. Any amounts due under this Paragraph, shall constitute additional Obligations (defined in paragraph 17, below) owed by you to us.

8. **Accounts Receivable Limit.** The accounts receivable amount of Accounts purchased by us from you that are unpaid at any time by your customers must not exceed ▮▮▮▮▮

9. **Processing Fee.** You shall pay to us a processing fee of ▮▮▮ per invoice, plus applicable postage and/or messenger fees and overnight courier charges for each Account purchased from you. The processing fee is due and payable immediately at the time of purchase.

10 **Authorized Representatives.** You hereby appoint **WAYNE J. KLEIN** with full power-of-attorney to act on your behalf in regard to this Agreement and to take any and all actions required or permitted to be taken by you pursuant to this Agreement, and we are entitled to treat all of their actions as being authorized by you unless and until we receive written notification from you to the contrary.

11. **Guarantees.** This Agreement is subject to, and we have agreed to these terms based, in part, on our receipt of the guarantees of **WAYNE J. KLEIN**.

12. **Financial Information.** You shall provide us with quarterly financial statements, prepared in conformity with generally accepted accounting principles applied on a consistent basis and all such other financial documents, records or information as we may request, including, without limitation, bank statements, within 30 calendar days after the end of each calendar quarter. The first quarterly financial statement is due by **OCTOBER 31, 2021**. We will advise you of the due date for any other financial documents, records or information in connection with any such request . In addition, you shall provide us with copies of your general liability insurance policy and any other such insurance policies as we may reasonably request. Upon our request you shall designate us as loss payee of any policies that cover our collateral or your obligations to us. You also shall provide us with copies of all Internal Revenue Code Section 941 tax filings and proof of payment of taxes for the prior quarter within thirty (30) days after the end of each calendar quarter. The first copies of Section 941 tax filings and proof of tax payment are due **OCTOBER 31, 2021**. If you fail to provide required financial statements, documents, records, or information; or Section 941 filings and proof of tax payments as required, we may, after affording written notice of default or breach and 10 days opportunity to cure, declare this Agreement to be terminated and we may, in such event, recover damages due to your breach.

13. **Term; Termination.** This Agreement shall commence on the date hereof, and shall continue until **JULY 9, 2022**, for a twelve (12) month period, and automatically from year to year thereafter, unless you give us notice in writing by certified or registered mail, 60 calendar days before the expiration of the original term or any subsequent renewal term, of your intention to terminate at the end of the term, with the understanding that We may terminate this Agreement at any time upon 30 calendar days written notice to you by certified or registered mail. In the event of such renewal you will be required to meet the volume requirement set out in paragraph 7 above in each renewal term. We may immediately suspend our obligation to purchase additional Accounts from you or immediately terminate this Agreement without notice if (a) there is issued or filed against you any tax lien, (b) you commit any breach of or default in the performance of your covenants, warranties, or representations, (c) you make any false or untrue representation to us in connection with this Agreement or any transaction relating to it, (d) you convene or cause to be convened a meeting of your creditors or principal creditors or take advantage of the insolvency laws of any jurisdiction, (e) you become unable to pay your debts as they mature, make a general assignment for the benefit of your creditors, or suspend the transaction of your usual business, (f) there is issued or filed against you any attachment, injunction, execution, or judgment that is not removed within 30 calendar days after it was issued or filed, (g) a case is commenced or a petition in bankruptcy or for an arrangement or reorganization under any bankruptcy or insolvency laws is filed by or against you, a custodian or receiver (or other court designee performing the functions of a receiver) is appointed for or takes possession of your assets or affairs, or an order for relief in a case commenced under any bankruptcy or insolvency law is entered, or (h) you are dissolved or you or any of your direct or indirect parent companies enters into any agreement or transaction for the sale or other transfer of a majority of its assets (measured by fair market value) or outstanding voting stock,

2                                                                 Initial: ___ Date: ___

whether pursuant to a sale, lease, merger, spin-off, split-up, foreclosure, dissolution, bankruptcy, liquidation, consolidation, tender offer, share exchange, recapitalization, reorganization, or other transaction. Our rights and your obligations arising out of transactions having their inception before the suspension of the purchase of Accounts or termination of this Agreement will not be affected by any suspension of our obligations under or termination of this Agreement. Upon any termination of this Agreement, whether at your or our instance, all sums due from you to us shall be deemed to be immediately due and payable to us, and after such termination any credit balance in your favor may be held by us until a final account is rendered, unless you furnish to us indemnity satisfactory to us against any amounts chargeable against you under this Agreement. Notwithstanding our right to suspend the purchase of Accounts under this Agreement, you will continue to assign to us, at our request, additional Accounts and turn over all collections until all your Obligations (as defined below) to us under this Agreement have been paid in full, and until then, this Agreement will remain in full force and effect as to and be binding on you and us, and we will be entitled to retain our security interests in all assets granted pursuant to this Agreement. Termination of this Agreement will not become effective until you have fully paid and discharged any and all of your Obligations to us, matured or unmatured, absolute or contingent, and whether arising under this Agreement or otherwise. After the giving of any notice of termination hereunder and until the full liquidation of your obligations under this Agreement, you will not be entitled to receive any equities or payments from us.

14. **Account Disputes and Adjustments.** Each Account that we purchase from you is our property and we may, in our sole discretion and at your expense, settle, forgive, compromise, accept payments over time, or otherwise accept payment of less than the full amount if, in our judgment, that action is appropriate to effectuate collection (although we have no obligation to do so). Any settlement or compromise that we make with an Account debtor will not bar or constitute a waiver of any claims against you or your obligations to us. If any merchandise is returned by or recovered from a customer, you shall pay to us the full amount of the related Account (either in cash or by assignment of new Accounts), and until that payment or assignment, you shall hold the merchandise in trust for us for our benefit, shall keep that property segregated and identified as property held in trust for us, and upon our reasonable request, you shall deliver the merchandise to a place designated by us. Upon notice to you, we may sell or cause the sale of the merchandise in accordance with applicable law and, in the event of a public sale, we may purchase the merchandise. We may apply the proceeds of any sale first to pay the costs and expenses associated with the sale, and the balance, if any, will be credited to your account with us. You authorize us to file liens or bond claims related to any Account that we purchase and to initiate and pursue litigation in your name or ours to collect any Account we have purchased or to enforce any rights in connection with those Accounts if, in our sole judgment, we deem it advisable to do so. In the event we retain counsel to assist in collection or to file suit to collect any Account we have purchased from you, all costs and expenses incurred in such collection efforts, including but not limiting to the attorneys' fees we incur, may be setoff and charged against any other sums due you. Any sums we are unable to set off or charge against any other sums due you, shall constitute additional Obligations (defined in paragraph 17, below) owed by you to us.

In the event any claim of set-off, discount, real or personal defenses, or counterclaims are asserted, claimed, or alleged by an Account debtor against an Account purchased by us, whether asserted in writing, orally, or in litigation, then as between you and us, the burden of proof shall be on you to prove that the claim, defense, set-off, or counterclaim is false and, as between you and us, the presumption will be that the Account debtor is correct.

15. **Customer Claims.** You immediately shall report to us in writing (a) all claims or disputes made by your customers, (b) the loss, return, damage, or rejection of any merchandise, (c) any offer to return any merchandise, and (d) any request for an extension of time to pay or request for credit or adjustment, and you will promptly adjust all such claims and disputes; however, if you fail to do so immediately, we may make the adjustment at your cost and expense. You shall indemnify us against all cost, loss, expense, and liability caused by or arising out of the rejection of goods or services or claims or deductions of every kind and nature by your customers. We reserve the right at any time to charge back to you the amount of the Account invoiced in any alleged dispute or claim and that charge will be deemed a reassignment of the disputed amount of the Account to you. However, title to the merchandise represented thereby shall remain assigned to us regardless of notations or conditions placed thereon by your customer, and we will continue to have a security interest in the Account and the merchandise represented by it until the Account is fully paid, settled, or discharged or all your Obligations to us are fully satisfied. In the event of any claim, dispute, or reassignment, we are entitled to charge back the amount of the claim, dispute, or reassignment to you against any additional conditional consideration otherwise payable pursuant to this Agreement. We are also entitled to charge interest at ▮ per annum in regard to a disputed invoice and may assess a ▮▮▮▮ service charge in each case, plus attorneys' fees and costs we incur.

16. **Collections.** If you receive any cash, notes, checks, drafts, acceptances, or collections in any form on any Accounts assigned to us, you shall hold those amounts in trust for us (separate and apart from your own funds), and you shall immediately transmit and deliver them to us in the identical form received. Your failure to immediately deliver those payments to us gives us the right to demand cash payment from you, to immediately terminate this Agreement and to collect those funds by withholding amounts otherwise due to or held for you by us without demand or notice, or both, among other remedies. We (and each person that we may from time to time designate) have the absolute right and power of attorney to act on your behalf and have the right to sign and/or endorse your name on any and all checks, drafts, and remittances of any kind or nature where the endorsement may be required to effect collection, and to sign and/or endorse papers, receipts, documents, instruments, liens, insurance or bond claims, and bills of lading relating to transactions between you and us. You grant us power of attorney to change the address for delivery of mail to you and to receive and open mail addressed to you if we deem such action reasonably necessary in order to effect collections. If, for any reason, you receive a draft, check, or payment from any Account debtor in payment on an Account conveyed to us, or if you take any action (or fail to take any action) which has the effect of interfering with, delaying or preventing us from receiving payment on an Account conveyed to us (e.g. directing a debtor to stop payment), whether or not you actually receive the payment, and you do not immediately endorse and deliver the draft, check, or payment to us, or otherwise cause the payment to be immediately delivered to us, you acknowledge that you are liable for civil fraud and are guilty of civil theft and conversion of our property. In the event we fail to receive any payment as described in the foregoing sentence by the next Business Day after you or your authorized agent interferes with, delays, or causes us to fail to receive such payment, we may impose a fee equal to fifteen (15%) (a **"Misdirected Payment**

3                                                          Initial: ᴺ̶ᴸ̶ Date: 8/8/21

Fee") of the gross amount of any payment you receive or that you interfere with, delay or prevent us from receiving, plus fees and costs as otherwise allowed by this Agreement.

17. **Security Agreement.** You and we intend for each sale of an Account to us pursuant to this Agreement to constitute a true sale of the Account and not as a loan from us to you. If for any reason a sale of an Account contemplated by this Agreement is not deemed to constitute a true sale despite the parties' intentions, and, as collateral security for any and all of your indebtedness and obligations to us, whether matured or unmatured, absolute or contingent, now existing or hereafter arising (including under indemnity or reimbursement agreements or by subrogation), and however acquired by us, whether arising directly between you and us or acquired by us by assignment, whether relating to this Agreement or independent hereof, including all obligations incurred by you to any other person factored or financed by us (collectively, the **"Obligations"**), you grant to us a security interest in all of your assets and property, including without limitation, the following collateral, whether the collateral is now owned or existing or is owned, acquired, or arises hereafter, and whether or not the property is specifically assigned to us: (a) all Accounts, accounts receivable that have not been assigned to us, and your contract rights and Related Security (defined below) with respect to Accounts and other accounts receivable; (b) all your other rights to the payment of money and payment intangibles, including without limitation amounts due from us or from your affiliates, tax refunds, and insurance proceeds (including credit insurance proceeds); (c) all of your interest in any returned, repossessed, finished or unshipped goods; (d) all motor vehicles, trucks, vans, automobiles, equipment, machinery, inventory, fixtures, furniture, unfinished goods, and leasehold improvements, whether now owned or hereafter acquired, together will all replacements thereof, all attachments, accessories, parts and tools belonging thereto for the use in connection therewith, together with the proceeds thereof, along with all insurance and insurance proceeds; (e) all of your files, books, and records (including without limitation computer programs, tapes, and related electronic data processing software); (f) all goods, instruments, policies, and certificates of insurance, securities, chattel paper, documents, deposits, deposit accounts, letter of credit rights, supporting obligations, investment property, cash, and other property owned by you or in which you have an interest; (g) all of your security and guarantees therefore and in the goods and property represented thereby; (h) all your general intangibles (including, without limitation all patents, trademarks, and copyrights registered in the United States copyright or patent offices, together with the good will of the business in connection with which such trademark may be used and the royalties and other fees which become due for the use of such patents, trademarks, or copyrights and any of your rights to retrieval from third parties of electronically processed and recorded information pertaining to any of the foregoing types of collateral and all software, whether or not embedded); and (h) proceeds and products of all of the foregoing. You also grant to us a lien and security interest in all your property now in or at any time hereafter coming into our control, custody, or possession, whether for the express purpose of being used by us as collateral, or for any other purpose, and upon any balance or balances to the credit of any accounts maintained with us by you. You hereby irrevocably authorize and direct us to charge at any time to your account, and to pay any Obligations owing by you to us, by so charging your account. **"Related Security"** means, with respect to any Account (i) all instruments, chattel paper, and general intangibles and payment intangibles arising from, related to, or evidencing the Account, (ii) all UCC financing statements covering any collateral securing payment of the Account, (iii) all records of any nature evidencing or related to the Account, including contracts, invoices, charge slips, credit memoranda, notes, and other instruments and other documents, books, records, and other information, and (iv) all proceeds and amounts received or receivable arising from any of the foregoing.

This Agreement shall constitute a security agreement pursuant to the Uniform Commercial Code in effect in your State (the **"UCC"**), and in addition to any and all of our other rights under this Agreement, we will have all of the rights of a secured party pursuant to the provisions of the UCC. In addition to our other rights hereunder and as additional collateral security to us for any and all of your Obligations to us, you shall execute a financing statement and any and all other instruments and documents that we may now or hereafter deem to be required or provided for by the UCC or other law applicable thereto reflecting the security interests granted to us under this Agreement. You hereby authorize us to file a financing statement without your signature, signed only by us as secured party, to reflect the security interest granted to us in this Agreement and to describe the foregoing collateral in any financing statement as "all personal property."

You agree that we may notify an account debtor or other person obligated on an account to make payment or otherwise render performance to or for the benefit of us at any time whether or not the account is specifically assigned to us. Any term used in the UCC and not defined in this Agreement has the meaning given to that term in the UCC.

We may collect and hold all sums of money due to you by us (including, without limitation, any additional conditional consideration otherwise due to you) and any of your money or property at any time in our possession as security for any and all Obligations now or hereafter owing to us by you, whether arising hereunder, independently hereof, or acquired by us by assignment or otherwise, notwithstanding that any of that money or property might have been deposited, pledged, or delivered by you, or any other entity for any other, different, or specific purpose. Without in any way limiting the generality of the foregoing rights, you specifically agree that we may exercise a right of set-off against additional conditional consideration otherwise due you or against any checks or other funds due you that may come into our possession (whether by purchase of an Account, by mistaken payment by your Account debtors, or otherwise), to pay damages you may owe pursuant to this Agreement. We have the right to collect and offset (from any source), all Obligations due to us under this Agreement prior to collecting or remitting payment to you.

18. **Survival.** All warranties, representations and agreements made herein shall survive the execution of this Agreement and each transaction made pursuant to this Agreement and termination of this Agreement. All indemnification provisions and obligations for reimbursement of fees and costs, including without limitation, the requirement to reimburse us for reasonable attorneys' fees and costs, shall survive termination of this Agreement.

19. **Representations and Warranties.** You make the following representations and warranties to us, all of which are material to this Agreement and will survive the conveyance of any or all Accounts hereunder:

4

Initial: _____ Date: _____

(a) You are duly organized, validly existing, and in good standing under the laws of **ILLINOIS** and are duly qualified to do business and in good standing in each other jurisdiction where your ownership of property or the conduct of your business requires that qualification, except where the failure to be so qualified could not reasonably be expected to have a material adverse effect on your assets or business, and your execution, delivery, and performance of this Agreement does not and will not constitute a violation of any applicable law, your governing documents, or a breach of any document, instrument, or agreement to which you are a party or are bound;

(b) You are solvent and are the sole and absolute owner of all Accounts conveyed hereunder, have good and clear title to those Accounts, and have full power and legal right to sell, convey, assign, and transfer free and clear title to those Accounts to us;

(c) Each and every Account now or hereafter assigned to us (i) is a valid account and will cover a bona fide sale and delivery of goods usually dealt in by you or the rendition by you of services to customers in the ordinary course of your business, (ii) covers services or goods that have been received and accepted by your customers who are not your affiliates, without claim or dispute of any kind or nature (including any dispute or claim by a customer in whole or in part as to price, terms, quality, quantity, delay in shipment, offsets, counterclaims, contra accounts, or any other defense of any kind or character), (iii) will be for an amount certain payable in United States funds in accordance with the terms of your invoice covering the sale (which will not be changed without our advance written approval), (iv) does not represent a delivery of merchandise on "consignment," "guaranteed sale," "sale or return," "payment on reorder," or similar terms, (v) does not represent a "pack, bill, and hold" transaction, and (vi) does not arise from the sale of goods or services performed by you to any entity that is affiliated with or controlled by you or any of your principals.

(d) You have not sold, pledged, assigned, hypothecated, granted a security interest in, or otherwise encumbered the Accounts (other than pursuant to this Agreement) and will not do so other than to us at any time during the term of this Agreement and until its termination becomes effective;

(e) You have not contracted to assign and have not assigned any Account conveyed hereunder to any other person or entity and you will not sell, factor, transfer, pledge, or give a security interest in any of your Accounts to anyone other than us;

(f) You are the sole and absolute owner of all property in which a security interest is granted to us hereunder, have good and clear title to all property in which you have granted to us a security interest under this Agreement, and have full power and legal right to grant to us a security interest in your property;

(g) You make no warranties, representations, or guarantees regarding the solvency of any Account debtor on any Account conveyed hereunder, except that you have no knowledge of any adverse financial conditions regarding any Account debtors;

(h) You are properly licensed and authorized to conduct your business under all applicable laws and in the trade names you use, all of your financial books and records are true and accurate, your business is properly insured, and you operate your business in material compliance with all applicable local, state, and federal laws;

(i) All documents to be delivered by you to us will be genuine and, to your best knowledge, will be enforceable against your customers free and clear of any lien, offset, deduction, counterclaim, encumbrance, or any other claim or dispute, including without limitation, claims or disputes as to price, terms, delivery, quantity, or quality, and claims of release from liability or because of the requirements of law or of rules, orders, or regulations having the force of law; and

(j) Neither you nor any of your direct or indirect parent companies will enter into any agreement or transaction for the sale or other transfer of a majority of its assets (measured by fair market value) or outstanding voting stock, whether pursuant to a sale, lease, merger, spin-off, split-up, foreclosure, dissolution, bankruptcy, liquidation, consolidation, tender offer, share exchange, recapitalization, reorganization, or other transaction without our advance written consent.

20. You acknowledge that the "Prime Rate" (as reported in The Wall Street Journal as the general level of the base rate charged on corporate loans at large United States money center commercial banks) on the effective date of this Agreement is **3.25%**. Should the "Prime Rate" reported by The Wall Street Journal exceed **3.25%** at any time from and after the effective date of this Agreement, we may: (a) decrease the additional conditional consideration we pay you pursuant to paragraph 6 as to each invoice paid after that date; and (b) determine the decrease to the paragraph 6 additional consideration for all invoices by subtracting **3.25%** from the highest Prime Rate in effect at any time from and after the effective date of this Agreement. Should no additional consideration be owed pursuant to paragraph 6 or, at our option, we may bill you for amounts due in accordance with this paragraph.

21. You further acknowledge and agree that if you breach any representation or warranty or any other provision of this Agreement, we may accelerate and demand immediate payment of all outstanding Obligations.

22. **Severability.** If any term or part of this Agreement is determined by a court or arbitrator to be invalid, illegal, or unenforceable, in whole or in part, the invalid provision will be ineffective to the extent of such prohibition without invalidating the remaining portions of this Agreement.

23. **Office of Foreign Asset Control.** You shall not (a) be or become subject at any time to any law, regulation, or list of any government agency (including, without limitation, the U.S. Office of Foreign Asset Control list) that prohibits or limits us or Gulf Coast Bank and Trust Company or its assigns ("Bank") from making any advance or extension of credit to you or from otherwise conducting business with you, or (b) fail to provide documentary and other evidence of your identity as may be requested by Bank or us at any time to

5

Initial: _NW_ Date: _8/15/2021_

enable Bank and us to verify your identity or to comply with any applicable law or regulation, including, without limitation, Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318.

24. **USA Patriot Act Notification.** The following notification is provided to you pursuant to Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318:
IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account, including any deposit account, treasury management account, loan, other extension of credit, or other financial services product. This will affect you in several ways. When you open an account or enters a financial agreement with the Bank or us, if you are an individual, we and/or the Bank will ask for your name, taxpayer identification number, residential address, date of birth, and other information that will allow Bank and us to identify you, and, if you are not an individual, we or the Bank will ask for your name, taxpayer identification number, business address, and other information that will allow Bank and us to identify you. We or the Bank may also ask, if you are an individual, to see your driver's license or other identifying documents, and, if you are not an individual, to see your legal organizational documents or other identifying documents.

25. ***Taxes Generally.*** You shall pay all intangible taxes, documentary stamp taxes, UCC filing fees, sales taxes or any other taxes applicable to this Agreement or the transactions occurring pursuant to this Agreement, except state or federal income taxes owed by us, and shall indemnify us against any amounts paid directly by us. We may offset against any amounts we owe to you the amount of any taxes paid by us for which you have not indemnified or reimbursed us. Sales taxes due to any state on any Account by an Account debtor shall, upon payment to us, be paid over to you for remittance to the appropriate state taxing authority. We are not responsible for the collection and payment of sales tax, and you shall indemnify us from any liability for sales or other taxes payable by you or an Account debtor.

26. ***Miscellaneous.*** This Agreement (and any related lockbox agreement) record the entire agreement regarding the purchase of your Accounts and supersedes any previous or contemporaneous agreement, understanding, or representation, oral or written, by either party. A waiver, amendment, or other modification of this Agreement will be valid and effective only if it is in writing and signed by both parties. A delay, omission, or course of dealing on our part in exercising any right, power, or remedy under this Agreement will not operate as a waiver of it or any other right, power, or remedy under this Agreement, and a single or partial exercise of any right, power, or remedy under this Agreement does not preclude any further exercise of it, or the exercise of any other right, power, or remedy. In addition, the written waiver by us of a right, power, or remedy under any provision of this Agreement will not constitute a waiver of any succeeding exercise of that right, power, or remedy or a waiver of the provision itself. All of powers, rights, and remedies granted to us in this Agreement, any other agreement or instrument, or by applicable law are cumulative and may be exercised singularly or concurrently with any other powers, rights, and remedies we might have. The validity, interpretation, construction, and enforcement of this Agreement are governed by the laws of the State of Florida and the federal laws of the United States of America, excluding the laws of those jurisdictions pertaining to the resolution of conflicts with laws of other jurisdictions. In any arbitration or litigation between the parties pertaining to this Agreement or an Account, the losing party shall reimburse the prevailing party, on demand, for all attorneys' fees and costs incurred by the prevailing party as a result of the arbitration or litigation. Each party to this Agreement (a) consents to the personal jurisdiction of the state and federal courts having jurisdiction over Orange and Osceola County, Florida, (b) stipulates that the Circuit Courts in and for Orange or Osceola County, Florida, and the United States District Court for the Middle District of Florida - Orlando Division, are the proper, exclusive, and convenient venues for all trial court proceedings arising out of or relating to this Agreement or your relationship with us, (c) waives any defense, whether asserted by motion or pleading, that either of those forums is an improper or inconvenient venue and (d) agrees that the proper venue may be chosen by AmeriFactors. This Agreement is binding on, and inures to the benefit of, the respective assignees and successors of the parties to it. You may not pledge our credit for any purpose. You shall not change your jurisdiction of organization or incorporation without giving us at least 60 calendar days' advance written notice of the change. As used in this Agreement, the word "costs" includes all the fees, costs, and expenses of experts, attorneys, mediators, arbitrators, witnesses, and supersedes bonds, whether incurred before or after demand or commencement of legal proceedings, and whether incurred pursuant to trial, mediation, arbitration, bankruptcy, administrative, or judgment-execution proceedings. You shall indemnify us and hold us harmless from and against any and all fees, costs, claims, expenses, judgments, and liabilities (including attorneys' fees) that are imposed on us or threatened or asserted against us from time to time in any way connected with this Agreement, any Account, or any collateral for your Obligations.

**SO LONG AS THIS AGREEMENT IS IN EFFECT, YOU SHALL NOT FURTHER ENCUMBER YOUR ASSETS WITHOUT PRIOR WRITTEN PERMISSION FROM US, WHICH PERMISSION MAY BE WITHHELD IN OUR SOLE AND ABSOLUTE DISCRETION. YOU AGREE THAT THIS IS A MATERIAL TERM IN THE AGREEMENT, THE BREACH OF WHICH WILL CAUSE US HARM. YOU FURTHER AGREE THAT IN TH EVENT OF A BREACH OF THIS PROVISION BY YOU, WE MAY IMPOSE A FEE EQUAL TO 5% OF YOUR GROSS OPEN ACCOUNT BALANCE WITH US AT THE TIME WE DISCOVER SUCH BREACH, PLUS OTHER FEES AND COSTS AS ALLOWED BY THIS AGREEMENT AND/OR APPLICABLE LAW. YOU ALSO AGREE THAT WE MAY FILE A FINANCING STATEMENT GIVING EFFECT TO THIS PROVISION AND REFLECTING THAT ANY FURTHER ENCUMBERING OF YOUR ASSETS IS PROHIBITED.**

27. **IT IS AGREED BETWEEN THE PARTIES THAT TRIAL BY JURY IS HEREBY WAIVED IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER OF US AGAINST THE OTHER ON ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT OR OUR RELATIONSHIP CREATED HEREBY. YOU FURTHER AGREE THAT YOU WILL PURSUE ANY CLAIM OR LAWSUIT ARISING FROM OR RELATING TO YOUR RELATIONSHIP WITH US (INCLUDING OUR OFFICERS, DIRECTORS OR EMPLOYEES), WHETHER SUCH CLAIM ARISES UNDER THIS AGREEMENT OR OTHERWISE AS AN INDIVIDUAL, AND WILL NOT LEAD OR JOIN OR SERVE AS A MEMBER OF A CLASS OR GROUP OF PERSONS BRINGING SUCH A CLAIM OR LAWSUIT.**

6

Initial: _____ Date: _____

28. **Origination Fees.** Application ████ Closing ████ ocumentation ████ and UCC ████

29. If funds are wired, a fee of ████ will be charged. If funds are ACH transmitted, a fee of ████ will be charged. Incoming wire payments will incur an additional fee of ████ Incoming ACH payments will incur an additional fee of ████ Credit inquiries are assessed based on the amount of credit requested, but will be no more than ████ JSA-based customer) and up to ████ or international customers). The foregoing credit fees are assessed on a per inquiry basis.

**APPROVED AND ACCEPTED:**

Client: <u>KLEIN CONSTRUCTION LTD.</u>

By:

Name
& Title: <u>WAYNE J. KLEIN, PRESIDENT</u>

Date: <u>JULY</u> <u>1</u> , <u>2021</u>

**AMERIFACTORS FINANCIAL GROUP, LLC**

By: *Jeannette Nearing*

Name
& Title: <u>JEANNETTE NEARING, BUSINESS DEVELOPMENT OFFICER</u>

Date: <u>JULY</u> , <u>2021</u> 08/19/2021

(FORM 2001) 3/00

1037-008*L Factoring Agreement (GRFH/LGP 6-15-21 clean)

7

Initial: Date:

The foregoing Factoring Agreement was acknowledged before me this _18th_ day of _____, 2021 by WAYNE J. KLEIN of KLEIN CONSTRUCTION LTD., a(n) ILLINOIS Corporation who is personally known to me or who has produced as identification _____ (type of identification).

_____
Notary Public, State of IL

_____
(Printed Name of Notary Public)

JOHN P LUTGEN
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires
December 05, 2023

_____
Title or Rank

_____
Serial Number, if any

**ATTENTION**
*Please include a copy of Driver's License used as identification at time of Notarization.*

# EXHIBIT B

# (Invoice)



**KLEIN** Construction

P.O. Box 628328 • Orlando, FL 32862-8328

630.325.1000 • fax 630.325.2225
email: build@kleinconstruction.net
www.kleinconstruction.net

| Bill To: | | Invoice #1903-14 | |
|---|---|---|---|
| The University of Chicago | | Date | 8/13/2021 |
| 5801 S. Ellis Avenue | | For the period ending | |
| Chicago, IL 60637 | | 7/31/2021 | |

| | |
|---|---|
| *University Project Manager* | Andrea Herring |
| *University of Chicago Project Number* | 20007 |
| *Project Location* | SW Corner of 56th and Maryland, Chicago, IL. 60637 |
| *University of Chicago Ledger 8 number* | 8-81189 |
| *University of Chicago Contract number* | F845300 |

| | | | |
|---|---|---|---|
| Design Services for New High Bay Building - Contract Amount | | $ 609,800.00 | |
| Aproved Change Orders 2,4,6,7, 8,10,13, 14,18&19 | $10,058,076.01 | | $ 10,667,876.01 |
| *Billing Period* | 6/01/21 - 7/31/21 | | |

| | | | |
|---|---|---|---|
| *Submitted by* | Wayne Klein II | (630)202-4400, wklein@kleinconstruction.net | |

| Contractor | Contract Amount | This Invoice |
|---|---|---|
| **Klein Construction, Ltd.** | $ 5,411,386 | $ 95,398.88 |
| LEED Costs | $ 17,637 | $ - |
| Klein Permits and Fees | $ 24,984 | $ - |
| Groundcrew | $ 46,800 | $ - |
| Groundcrew | $ 330,000 | $ 31,609.40 |
| City Lights | $ 6,000 | $ - |
| Gallagher Concrete | $ 648,000 | $ - |
| Stonecast | $ 715,000 | $ - |
| Colvin | $ 27,000 | $ - |
| Waukegan Steel | $ 1,070,000 | $ 24,640.00 |
| VEI | $ 490,000 | $ - |
| Bofo Waterproofing Systems | $ 45,400 | $ - |
| Creative Panels | $ 110,000 | $ 63,250.00 |
| Metalmaster/Roofmaster | $ 540,000 | $ 33,995.40 |
| Spray Insulation | $ 120,000 | $ 36,800.00 |
| American Building Systems | $ 32,285 | $ - |
| Anagnos | $ 36,500 | $ - |
| Market Contracting | $ 323,000 | $ 60,850.00 |
| All Tech Decorating | $ 95,000 | $ 27,200.00 |
| Profasts | $ 115,000 | $ 58,000.00 |
| D.A.M Plumbing | $ 330,000 | $ 45,400.00 |
| McCauley Mechanical | $ 1,813,400 | $ 728,356.00 |
| Taylor Electric Company | $ 881,000 | $ 185,034.00 |
| Sievert Crane | $ 273,300 | $ 13,665.00 |
| Hardt Electric | $ 12,000 | $ - |
| Pro-Bel | $ 22,095 | $ 9,155.00 |
| Less 10% Retention | | $ (141,280.23) |
| Net Due less Retention | | $ 1,272,073.45 |
| | | |
| Retention Reduction to 0 % | | $ - |
| | | |
| **Architrave, Ltd.** | $ 249,500 | $ - |
| LEED Silver Status | $ 24,220 | $ - |
| Utility Connection Redesign | $ 14,630 | $ - |
| Storm Retention Vault | $ 2,452 | $ - |
| **Terra Engineering, Ltd.** | $ 36,000 | $ - |
| LEED Costs | $ 7,200 | $ - |
| Utility Connection Redesign | $ 9,600 | $ - |
| **David Mason & Assoc.** | $ 56,100 | $ - |
| LEED Costs | $ 6,000 | $ - |
| Utility Connection Redesign | $ 3,100 | $ - |
| Storm Retention Vault | $ 9,300 | $ - |
| **dbHMS** | $ 88,200 | $ - |
| LEED Costs | $ 50,000 | $ - |
| Utility Connection Redesign | $ 6,000 | $ - |
| **HJKessler Associates,LEED Consultant** | $ 34,000 | $ - |
| Net Due This Invoice | | $ 1,272,073.45 |
| | $ 14,132,089 | |
| Previously Paid | | $ 5,212,939.41 |
| Balance to Spent   REMIT PAYMENT TO: P.O. Box 628328   Orlando, FL 32862-8328 | | $ 4,182,863.15 |

DocuSign Envelope ID: D0DB7638-E60C-4ED9-95DA-534028E24F6A

# APPLICATION AND CERTIFICATION FOR PAYMENT

*AIA DOCUMENT G702*

PAGE ONE OF 1 PAGES

TO OWNER: The University of Chicago
5801 S. Ellis Avenue
Chicago, IL. 60637

PROJECT: New High Bay Building

APPLICATION NO: 14

PERIOD TO: 07/31/21

Distribution to:
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR

FROM CONTRACTOR:
Klein Construction Ltd

VIA ARCHITECT:

P.O. Box 628328 • Orlando, FL 32862-8328

PROJECT NOS: 20007

CONTRACT FOR: New High Bay Building

CONTRACT DATE: 11/08/19

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM | $ | 609,800.00 |
| 2. Net change by Change Orders | $ | 10,058,076.01 |
| 3. CONTRACT SUM TO DATE (Line 1 ± 2) | $ | 10,667,876.01 |
| 4. TOTAL COMPLETED & STORED TO DATE (Column G on G703) | $ | 7,084,161.47 |
| 5. RETAINAGE: | | |
| a. 10 % of Completed Work (Column D + E on G703) | $ 599,148.61 | |
| b. % of Stored Material (Column F on G703) | $ | |
| Total Retainage (Lines 5a + 5b or Total in Column 1 of G703) | $ | 599,148.61 |
| 6. TOTAL EARNED LESS RETAINAGE (Line 4 Less Line 5 Total) | $ | 6,485,012.86 |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT (Line 6 from prior Certificate) | $ | 5,212,939.41 |
| 8. CURRENT PAYMENT DUE | $ | 1,272,073.45 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE (Line 3 less Line 6) | $ | 4,182,863.15 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $9,979,994.15 | $0.00 |
| Total approved this Month | $85,027.61 | $6,945.75 |
| TOTALS | $10,065,021.76 | $6,945.75 |
| NET CHANGES by Change Order | $10,058,076.01 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By: _____ Date: 8-13-21

State of: Illinois County of: DuPage
Subscribed and sworn to before me this 13th day of August, 2021
Notary Public: _____
My Commission expires: 12/5/2023

[Notary seal: JENNIFER LINDGREN OFFICIAL SEAL Notary Public - State of Illinois My Commission Expires December 05, 2023]

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . $ _____

*(Attach explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)*
ARCHITECT:

By: _____ Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 · APPLICATION AND CERTIFICATION FOR PAYMENT · 1992 EDITION · AIA · ©1992
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, DC 20006-5292
**Users may obtain validation of this document by requesting a completed AIA Document D401 – Certification of Document's Authenticity from the Licensee.**

REMIT PAYMENT TO: P.O. Box 628328 Orlando, FL 32862-8328

DocuSign Envelope ID: D0DB7638-E60C-4ED9-95DA-534028E24F6A

THE UNIVERSITY OF CHICAGO

## Sworn Statement

Project Title: **New High Bay**
Contractor Name: **Klein Construction Ltd**
Contract #: **F845300**
Job Location: **SW Corner of 56th & Maryland, Chicago, IL.**
Service Period From: **06/01/21** To: **07/31/21**
Application For Payment #: **14**

| Work Code | Sub-Contractor | MBE/WBE Code | Description of Work | Original Contract (Scheduled Value) 1 | Change Orders 2 | Total Contract (1+2 = 3) 3 | % Complete 4 | Previous Work Completed 5 | Current Work Completed | Total Work Completed 6 | Retainage 7 | Previous Billings 8 | Current Amount Due (6÷7÷8 = 9) 9 | Remaining To Bill (3-6 = 10) 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Architrave Ltd. | J/S | Architectural Design | $429,800.00 | $176,678.05 | $606,478.05 | 96% | $585,171.93 | $ - | $585,171.93 | $ - | $585,171.93 | $ - | $21,306.12 |
| 2 | Ground Crew Excavati | D | House Demolition | $46,800.00 | $ - | $46,800.00 | 100% | $46,800.00 | $46,800.00 | $46,800.00 | $ - | $46,800.00 | $ - | $ - |
| 3 | Ground Crew Excavati | D | Excavation/Site Utilities | | $377,456.44 | $377,456.44 | 84% | $287,187.54 | $31,609.40 | $318,796.94 | $31,879.69 | $258,468.79 | $28,448.46 | $90,539.19 |
| 4 | Oly Lights | T | Site Electrical | | $50,000.00 | $50,000.00 | 12% | $6,000.00 | $ - | $6,000.00 | $600.00 | $5,400.00 | $ - | $44,600.00 |
| 5 | MetroMex | E | Paving | | $55,000.00 | $55,000.00 | 0% | $ - | $ - | $ - | $ - | $ - | $ - | $55,000.00 |
| 6 | Chrissy Weber | S | Landscaping | | $63,269.50 | $63,269.50 | 0% | $ - | | | | | | $63,269.50 |
| 7 | Klein Construction | U | Bike Racks | | $1,730.50 | $1,730.50 | 100% | $1,730.50 | | $1,730.50 | | $1,730.50 | | |
| 8 | Gallagher Concrete | D | Concrete | | $652,854.06 | $652,854.06 | 74% | $481,150.68 | $ - | $481,150.68 | $24,057.53 | $457,093.15 | 0.00 | $195,760.91 |
| 9 | Stonecast | D | Precast Concrete | | $716,931.30 | $716,931.30 | 99% | $707,931.30 | $ - | $707,931.30 | $70,793.13 | $637,138.17 | $ - | $79,793.13 |
| 10 | Calvin Masonry | D | Masonry | | $27,000.00 | $27,000.00 | 100% | $27,000.00 | $ - | $27,000.00 | $2,700.00 | $24,300.00 | $ - | $2,700.00 |
| 11 | Waukegan Steel | D | Structural Steel/Misc Iron | | $1,113,923.00 | $1,113,923.00 | 100% | $1,089,283.00 | $24,640.00 | $1,113,923.00 | $111,392.30 | $980,354.70 | $22,176.00 | $111,392.30 |
| 12 | VEI | E | Curtainwall Systems | | $490,000.00 | $490,000.00 | 3% | $16,000.00 | $ - | $16,000.00 | $1,600.00 | $14,400.00 | $ - | $475,600.00 |
| 13 | Phoenix Woodworking | S | Millwork | | $5,500.00 | $5,500.00 | 0% | $ - | | $ - | | | | $5,500.00 |
| 14 | Bofo Waterproofing Sy | J | Dampproofing/Waterproofing | | $60,558.00 | $60,558.00 | 30% | $18,400.00 | $ - | $18,400.00 | $1,840.00 | $16,560.00 | $ - | $43,998.00 |
| 15 | Creative Panels | H | Insulated Metal Panels | | $112,283.00 | $112,283.00 | 66% | $11,083.00 | $63,250.00 | $74,333.00 | $7,433.00 | $9,975.00 | $56,925.00 | $45,383.00 |
| 16 | Metal Master | D | Roofing & IMP's | | $540,000.00 | $540,000.00 | 44% | $203,438.40 | $33,995.40 | $237,433.80 | $23,743.38 | $183,094.56 | $30,595.86 | $326,309.58 |
| 17 | Spray Insulations Inc. | D | Fireproofing | | $120,000.00 | $120,000.00 | 41% | $12,000.00 | $36,800.00 | $48,800.00 | $4,880.00 | $10,800.00 | $33,120.00 | $76,080.00 |
| 18 | American Building Syst | D | HM Doors, Frames, Hardwa | | $32,285.00 | $32,285.00 | 5% | $1,614.00 | $ - | $1,614.00 | $161.40 | $1,452.60 | $ - | $30,832.40 |
| 19 | Anagnos | S | Overhead Doors | | $36,500.00 | $36,500.00 | 82% | $30,000.00 | $ - | $30,000.00 | $3,000.00 | $27,000.00 | $ - | $9,500.00 |
| 20 | Market Contracting | J | Drywall/Framing | | $328,124.00 | $328,124.00 | 67% | $159,950.00 | $60,850.00 | $220,800.00 | $22,080.00 | $143,955.00 | $54,765.00 | $129,404.00 |

Revised 3/17/2009

REMIT PAYMENT TO: P.O. Box 628328   Orlando, FL 32362-8328

DocuSign Envelope ID: D0DB7638-E60C-4ED9-95DA-534028E24F6A

Revised 4/17/2009

| Work Code | Sub-Contractor | MBE/WBE Code | Description of Work | Original Contract (Scheduled Value) | Change Orders | Total Contract (1+2 = 3) | % Complete | — Work Completed — Previous Work Completed | Current Work Completed | Total Work Completed (6) | Retainage | — Billing — Previous Billings | Current Amount Due (6+7-8 = 9) | Remaining To Bill (3-6+10) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21 | Floor & Wall Inc. | S | Flooring | 35,000.00 | 35,000.00 | 35,000.00 | 0% | - | - | - | - | - | - | 35,000.00 |
| 22 | All Tech Decorating | D | Painting | 95,000.00 | 95,000.00 | 95,000.00 | 29% | - | 27,200.00 | 27,200.00 | 2,720.00 | - | 24,480.00 | 70,520.00 |
| 23 | Commercial Specialties | V | Fire Protection Specialties | 621.00 | 621.00 | 621.00 | 0% | - | - | - | - | - | - | 621.00 |
| 24 | Commercial Specialties | I | Bath Accessories | 2,773.00 | 2,773.00 | 2,773.00 | 0% | - | - | - | - | - | - | 2,773.00 |
| 25 | ED 12 | S | Window Treatments | 5,715.00 | 5,715.00 | 5,715.00 | 0% | - | - | - | - | - | - | 5,715.00 |
| 26 | Profasts | J | Fire Supression | 115,000.00 | 115,000.00 | 115,000.00 | 91% | 47,000.00 | 58,000.00 | 105,000.00 | 10,500.00 | 42,300.00 | 52,200.00 | 20,500.00 |
| 27 | D.A.M Plumbing | | Plumbing | 341,758.00 | 341,758.00 | 341,758.00 | 91% | 264,600.00 | 45,400.00 | 310,000.00 | 31,000.00 | 238,140.00 | 40,860.00 | 62,758.00 |
| 28 | McCauley Mechanical | N | HVAC & Controls | 1,813,400.00 | 1,813,400.00 | 1,813,400.00 | 60% | 360,100.00 | 728,366.00 | 1,088,456.00 | 108,845.60 | 324,090.00 | 655,520.40 | 833,789.62 |
| 29 | Taylor Electric | R | Electric & Low Voltage | 883,967.61 | 883,967.61 | 883,967.61 | 47% | 234,237.60 | 185,034.00 | 419,271.60 | 41,927.16 | 210,813.84 | 166,530.60 | 506,563.17 |
| 30 | Peerless Fence | S | Ornamental Fences & Gates | 29,000.00 | 29,000.00 | 29,000.00 | 0% | - | - | - | - | - | - | 29,000.00 |
| 31 | Driven Fence | S | Chainlink Fence & Gates | 6,000.00 | 6,000.00 | 6,000.00 | 0% | - | - | - | - | - | - | 6,000.00 |
| 32 | Sievert Cranes | D | Overhead Cranes | 273,300.00 | 273,300.00 | 273,300.00 | 5% | - | 13,665.00 | 13,665.00 | 1,366.50 | - | 12,298.50 | 261,001.50 |
| 33 | Hardt Electric | V | PV Panels | 12,000.00 | 12,000.00 | 12,000.00 | 100% | 12,000.00 | - | 12,000.00 | 1,200.00 | 10,800.00 | - | 1,200.00 |
| 34 | Klein Construction | V | Manholes/Covers | 2,167.73 | 2,167.73 | 2,167.73 | 100% | 2,167.73 | - | 2,167.73 | - | 2,167.73 | - | - |
| 35 | Pro-Bail USA | | Window Washing Safety Equip | 22,095.00 | 22,095.00 | 22,095.00 | 41% | - | 9,155.00 | 9,155.00 | 915.50 | - | 8,239.50 | 13,855.50 |
| 36 | Klein Construction | V | Contingency | 98,441.18 | 98,441.18 | 98,441.18 | 0% | - | - | - | - | - | - | 98,441.18 |
| 37 | Klein Construction | V | General Conditions | 530,657.00 | 530,657.00 | 530,657.00 | 95% | 476,681.87 | 25,195.00 | 501,876.87 | 50,187.69 | 429,013.68 | 22,675.50 | 78,967.83 |
| 38 | Klein Construction | V | Permits & Fees | 24,984.40 | 24,984.40 | 24,984.40 | 100% | 24,984.40 | - | 24,984.40 | - | 24,984.40 | - | - |
| 39 | Klein Construction | V | Insurance | 92,727.45 | 92,727.45 | 92,727.45 | 100% | 91,953.00 | 551.45 | 92,504.45 | 9,195.30 | 82,757.70 | 551.45 | 9,418.30 |
| 40 | Klein Construction | V | Buyout Savings | 130,348.76 | 130,348.76 | 130,348.76 | 0% | - | - | - | - | - | - | 130,348.76 |
| 41 | Klein Construction | V | Overhead & Fee | 525,596.03 | 525,596.03 | 525,596.03 | 67% | 281,651.84 | 69,652.43 | 351,304.27 | 35,130.43 | 253,486.66 | 62,687.18 | 209,422.19 |
| | Klein Construction Ltd | V | Pre Construction / Design F | 190,691.00 | 10,691.00 | 190,691.00 | 100% | 190,691.00 | - | 190,691.00 | - | 190,691.00 | - | - |
| | | | | 609,800.00 | 10,058,076.01 | 10,667,876.01 | 66% | 5,670,907.79 | 1,413,353.68 | 7,084,161.47 | 599,148.61 | 5,212,939.41 | 1,272,073.45 | 4,182,863.15 |

WORK COMPLETED TO DATE (Col. 6)  7,084,161.47
TOTAL RETAINED (Col. 7)  599,148.61
NET AMOUNT EARNED (Col. 6 - Col. 7)  6,485,012.86
PREVIOUSLY PAID (Col. 8)  5,212,939.41
NET AMOUNT DUE THIS PAYMENT (Col.9)  1,272,073.45

AMOUNT OF ORIGINAL CONTRACT  $ 609,800.00
EXTRAS TO CONTRACT (CHANGE ORDERS)  $10,065,021.76
TOTAL CONTRACT AND EXTRAS  $10,674,821.76
CREDITS TO CONTRACT (CHANGE ORDERS)  $6,945.75
ADJUSTED TOTAL CONTRACT  $10,667,876.01

$ 10,667,876.01

STATE OF ILLINOIS
COUNTY OF COOK

The undersigned Wayne Klein II being duly sworn, on oath deposes and says that he/she is President for the Klein Construction Ltd. contractor for the General Construction of the following project:

PROJECT TITLE:  New High Bay

PROJECT ADDRESS: SW Corner of 56th & Maryland, Chicago, IL  60637

That, for the purpose of this work the foregoing orders have been placed and the foregoing parties subcontracted with, and these have furnished materials or have provided labor, or both for the said project. That, the amounts set opposite their names above and that the total amount is due and to become due as set opposite their names for materials or labor or both. That, this statement is made in accordance with the statues relating to Mechanics Liens and for the purpose of procuring from the Owner FINAL/PARTIAL payment in accordance with its terms of the contract and is a full, true and complete statement, of all parties furnishing labor and/or material, and of amounts paid, due and to become due them.

Subscribed and sworn to before me this _____ day of _____ 2021

Notary Public

Signed By:
Name/Title:

... LUTGEN
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires
December 05, 2023

REMIT PAYMENT TO:  P.O. Box 628328   Orlando, FL 32862-8328

DocuSign Envelope ID: D0DB7638-E60C-4ED9-95DA-534028E24F6A



**KLEIN** Construction

**High Bay Research Building**
University of Chicago

| University of Chicago Project Number | 20007 | 8/13/2021 |
| University of Chicago Ledger 8 number | 8-81189 | Invoice # 1903-14 |
| University of Chicago Contract Number | F845300 | Period ending 07/31/21 |

## General Conditions

| Description | | Original Value | Previously Billed | Current Due | Balance Remaining | Comments |
|---|---|---|---|---|---|---|
| Project Executive | | $100,000.00 | $100,000.00 | $0.00 | $0.00 | 12 Months starting June 2020 |
| Project Manager | | $164,250.00 | $150,000.00 | $8,000.00 | $6,250.00 | 12 Months starting June 2020 |
| Project Engineer | | $26,500.00 | $25,000.00 | $750.00 | $750.00 | 10 Months starting August 2020 |
| Superintedent | | $179,550.00 | $146,250.00 | $14,895.00 | $18,405.00 | 11 Months starting September 2020 |
| Labor | By Trades | | | | | |
| Vehicles | | $9,600.00 | $8,000.00 | $800.00 | $800.00 | 2 per mnth, 12 Months starting August 2020 |
| Telephones | | $1,120.00 | $800.00 | $80.00 | $240.00 | 2 per mnth, 12 Months starting August 2020 |
| Autodesk | | $6,000.00 | $6,000.00 | $0.00 | $0.00 | Lump Sum |
| Blueprints | | $4,000.00 | $3,602.00 | $0.00 | $398.00 | By Order |
| Dumpsters | | $6,950.00 | $6,083.09 | $75.00 | $791.91 | By Order |
| Job Site Trailer | | $6,450.00 | $5,900.00 | $550.00 | $0.00 | Set up + $550/Month |
| Job Office Supplies | | $1,000.00 | $760.00 | $0.00 | $240.00 | $100/Month |
| Temporary Bathroom | | $2,600.00 | $2,600.00 | $0.00 | $0.00 | |
| Temporary Fencing | | $8,400.00 | $8,400.00 | $0.00 | $0.00 | Lump Sum |
| Temporary Water | | $500.00 | $338.99 | $45.00 | $116.01 | |
| Temporary Electric | | $4,250.00 | $4,083.33 | $0.00 | $166.67 | |
| Jobsite Signage | | $500.00 | $500.00 | $0.00 | $0.00 | |
| Materials & Tools | | $8,987.00 | $8,364.46 | $0.00 | $622.54 | |
| | | $530,657.00 | $476,681.87 | $25,195.00 | $28,780.13 | |

REMIT PAYMENT TO: P.O. Box 628328  Orlando, FL 32862-8328

# EXHIBIT C
# (Verification and Payment Agreement)

# **AMERIFACTORS**®
*FUNDING BUSINESS IS OUR BUSINESS®*

## **PLEASE DELIVER THE FOLLOWING  10   PAGE(S) INCLUDING COVER TO:**

NAME:                          ANDREA HERRING- MANAGEMENT/
                               COMPTROLLER

COMPANY/DEPT:     THE UNIVERSITY OF CHICAGO

EMAIL:                         AHERRING@UCHICAGO.EDU

REGARDING:            KLEIN CONSTRUCTION LTD.

FROM:                         ALEXANDRIA BROWN

DATE:                          AUGUST 26, 2021

**KLEIN CONSTRUCTION LTD.** wishes to assign **Payment Application #14, Invoice #1903-14, Project No. New High Bay Building, 20007 ($1,272,073.45).** Please review the attached payment application(s) and sign below to verify that all work has been completed and/or services performed as shown on the payment application(s), that the amount stated on the payment application(s) will be paid by your office, that there are no disputes, claims of offset, credits owed, prior payments, discounts, or any other matters that you contend reduces your obligation to pay the full amount of the payment application(s), and that you waive your right to assert any defense to payment of the payment application(s). In the event of a dispute related to this transaction, the prevailing party shall be entitled to recover its reasonable fees and costs.

We/I further confirm that the total amount shown on the payment application(s) will be paid within 60 (sixty) days to AmeriFactors at P.O. Box 628328, Orlando, FL 32862-8328 or will be paid to AmeriFactors Financial Group LLC via wire/ACH, BB&T, ABA ▇▇▇▇▇▇, Account # ▇▇▇▇▇▇▇▇, and shall constitute an agreement not to assert defenses or claims against payment pursuant to the Uniform Commercial Code.

## **PLEASE FAX/ EMAIL THIS SHEET BACK TO ME AS SOON AS POSSIBLE (844-880-0779), WITH A COVER PAGE ON YOUR LETTERHEAD.**

X_____          DATE _____
                                                                    8/27/2021

PRINT NAME: _____          TITLE:_____
                  Andrea Herring                            CPD - Project Manager

© Copyright March 26, 2018. AmeriFactors Financial Group, LLC



P.O. Box 628328 • Orlando, FL 32862-8328

630.325.1000 • fax 630.325.2225
email: build@kleinconstruction.net
www.kleinconstruction.net

| Bill To: | Invoice #1903-14 |
|---|---|
| The University of Chicago<br>5801 S. Ellis Avenue<br>Chicago, IL 60637 | Date         8/13/2021<br>For the period ending<br>7/31/2021 |

| | |
|---|---|
| *University Project Manager* | Andrea Herring |
| *University of Chicago Project Number* | 20007 |
| *Project Location* | SW Corner of 56th and Maryland, Chicago, IL. 60637 |
| *University of Chicago Ledger 8 number* | 8-81189 |
| *University of Chicago Contract number* | F845300 |

| | | | |
|---|---|---|---|
| Design Services for New High Bay Building - Contract Amount | | $ 609,800.00 | |
| Aproved Change Orders 2,4,6,7, 8,10,13, 14,18&19 | $10,058,076.01 | | $ 10,667,876.01 |
| *Billing Period*    6/01/21 - 7/31/21 | | | |

*Submitted by*      Wayne Klein II      (630)202-4400, wklein@kleinconstruction.net

| Contractor | Contract Amount | | This Invoice | |
|---|---|---|---|---|
| **Klein Construction, Ltd.** | $ | 5,411,386 | $ | 95,398.88 |
| LEED Costs | $ | 17,637 | $ | - |
| Klein Permits and Fees | $ | 24,984 | $ | - |
| Groundcrew | $ | 46,800 | $ | - |
| Groundcrew | $ | 330,000 | $ | 31,609.40 |
| City Lights | $ | 6,000 | $ | - |
| Gallagher Concrete | $ | 648,000 | $ | - |
| Stonecast | $ | 715,000 | $ | - |
| Colvin | $ | 27,000 | $ | - |
| Waukegan Steel | $ | 1,070,000 | $ | 24,640.00 |
| VEI | $ | 490,000 | $ | - |
| Bofo Waterproofing Systems | $ | 45,400 | $ | - |
| Creative Panels | $ | 110,000 | $ | 63,250.00 |
| Metalmaster/Roofmaster | $ | 540,000 | $ | 33,995.40 |
| Spray Insulation | $ | 120,000 | $ | 36,800.00 |
| American Building Systems | $ | 32,285 | $ | - |
| Anagnos | $ | 36,500 | $ | - |
| Market Contracting | $ | 323,000 | $ | 60,850.00 |
| All Tech Decorating | $ | 95,000 | $ | 27,200.00 |
| Profasts | $ | 115,000 | $ | 58,000.00 |
| D.A.M Plumbing | $ | 330,000 | $ | 45,400.00 |
| McCauley Mechanical | $ | 1,813,400 | $ | 728,356.00 |
| Taylor Electric Company | $ | 881,000 | $ | 185,034.00 |
| Sievert Crane | $ | 273,300 | $ | 13,665.00 |
| Hardt Electric | $ | 12,000 | $ | - |
| Pro-Bel | $ | 22,095 | $ | 9,155.00 |
| Less 10% Retention | | | $ | (141,280.23) |
| Net Due less Retention | | | $ | 1,272,073.45 |
| | | | | |
| Retention Reduction to 0 % | | | $ | - |
| | | | | |
| **Architrave, Ltd.** | $ | 249,500 | $ | - |
| LEED Silver Status | $ | 24,220 | $ | - |
| Utility Connection Redesign | $ | 14,630 | $ | - |
| Storm Retention Vault | $ | 2,452 | $ | - |
| **Terra Engineering, Ltd.** | $ | 36,000 | $ | - |
| LEED Costs | $ | 7,200 | $ | - |
| Utility Connection Redesign | $ | 9,600 | $ | - |
| **David Mason & Assoc.** | $ | 56,100 | $ | - |
| LEED Costs | $ | 6,000 | $ | - |
| Utility Connection Redesign | $ | 3,100 | $ | - |
| Storm Retention Vault | $ | 9,300 | $ | - |
| **dbHMS** | $ | 88,200 | $ | - |
| LEED Costs | $ | 50,000 | $ | - |
| Utility Connection Redesign | $ | 6,000 | $ | - |
| **HJKessler Associates,LEED Consultant** | $ | 34,000 | $ | - |
| Net Due This Invoice | | | $ | 1,272,073.45 |
| | $ | 14,132,089 | | |
| Previously Paid | | | $ | 5,212,939.41 |
| Balance to Spent   REMIT PAYMENT TO: P.O. Box 628328   Orlando, FL 32862-8328 | | | $ | 4,182,863.15 |

DocuSign Envelope ID: D0DB7638-E60C-4ED9-95DA-534028E24F6A

# APPLICATION AND CERTIFICATION FOR PAYMENT

*AIA DOCUMENT G702*

PAGE ONE OF 1 PAGES

TO OWNER: The University of Chicago
5801 S. Ellis Avenue
Chicago, IL. 60637

PROJECT: New High Bay Building

APPLICATION NO: **14**

PERIOD TO: 07/31/21

Distribution to:
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR

FROM CONTRACTOR:
Klein Construction Ltd

P.O. Box 628328 • Orlando, FL 32862-8328

VIA ARCHITECT:

PROJECT NOS: 20007

CONTRACT FOR: New High Bay Building

CONTRACT DATE: 11/08/19

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM | $ | 609,800.00 |
| 2. Net change by Change Orders | $ | 10,058,076.01 |
| 3. CONTRACT SUM TO DATE (Line 1 ± 2) | $ | 10,667,876.01 |
| 4. TOTAL COMPLETED & STORED TO DATE (Column G on G703) | $ | 7,084,161.47 |
| 5. RETAINAGE: | | |
| a. 10 % of Completed Work (Column D + E on G703) | $ 599,148.61 | |
| b. % of Stored Material (Column F on G703) | $ | |
| Total Retainage (Lines 5a + 5b or Total in Column 1 of G703) | $ | 599,148.61 |
| 6. TOTAL EARNED LESS RETAINAGE (Line 4 Less Line 5 Total) | $ | 6,485,012.86 |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT (Line 6 from prior Certificate) | $ | 5,212,939.41 |
| 8. CURRENT PAYMENT DUE | $ | 1,272,073.45 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE (Line 3 less Line 6) | $ | 4,182,863.15 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $9,979,994.15 | $0.00 |
| Total approved this Month | $85,027.61 | $6,945.75 |
| TOTALS | $10,065,021.76 | $6,945.75 |
| NET CHANGES by Change Order | $10,058,076.01 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge,
information and belief the Work covered by this Application for Payment has been
completed in accordance with the Contract Documents, that all amounts have been paid by
the Contractor for Work for which previous Certificates for Payment were issued and
payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By: _____ Date: 8-13-21

State of: Illinois    County of: DuPage
Subscribed and sworn to before me this 13th day of August, 2021
Notary Public: _____
My Commission expires: 12/5/2023

Margaret Hilgen
Notary Public - State of Illinois
NOTARY PUBLIC STATE OF ILLINOIS
OFFICIAL SEAL
My Commission Expires
December 05, 2023

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data
comprising the application, the Architect certifies to the Owner that to the best of the
Architect's knowledge, information and belief the Work has progressed as indicated,
the quality of the Work is in accordance with the Contract Documents, and the Contractor
is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . $ _____

*(Attach explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)*
ARCHITECT:

By: _____ Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the
Contractor named herein. Issuance, payment and acceptance of payment are without
prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 · APPLICATION AND CERTIFICATION FOR PAYMENT · 1992 EDITION · AIA · ©1992
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE, N.W., WASHINGTON, DC 20006-5292
**Users may obtain validation of this document by requesting a completed AIA Document D401 - Certification of Document's Authenticity from the Licensee.**

REMIT PAYMENT TO: P.O. Box 628328 Orlando, FL 32862-8328

DocuSign Envelope ID: D0DB7638-E60C-4ED9-95DA-534028E24F6A



**THE UNIVERSITY OF CHICAGO**

## Sworn Statement

| | |
|---|---|
| Project Title: | New High Bay |
| Contractor Name: | Klein Construction Ltd |
| Contract #: | F845300 |
| Job Location: | SW Corner of 56th & Maryland, Chicago, IL. |

| Service Period | | | | |
|---|---|---|---|---|
| From: | 06/01/21 | To: | 07/31/21 | |
| Application For Payment #: | | | 14 | |

| Work Code | Sub-Contractor | MBE/WBE Code | Description of Work | 1 Original Contract (Scheduled Value) | 2 Change Orders | 3 Total Contract (1+2 = 3) | 4 % Complete | 5 Previous Work Completed | 5 Current Work Completed | 6 Total Work Completed | 7 Retainage | 8 Previous Billings | 9 Current Amount Due (6+7-8 = 9) | 10 Remaining To Bill (3-6+9 = 10) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Architrave Ltd. | J/S | Architectural Design | $ 429,800.00 | $ 176,678.05 | $ 606,478.05 | 96% | $ 585,171.93 | $ - | $ 585,171.93 | $ - | $ 585,171.93 | $ - | 21,306.12 |
| 2 | Ground Crew Excavati | D | House Demolition | $ - | $ 46,800.00 | $ 46,800.00 | 100% | $ 46,800.00 | $ - | $ 46,800.00 | $ - | $ 46,800.00 | $ - | 44,600.00 |
| 3 | Ground Crew Excavati | D | Excavation/Site Utilities | $ - | $ 377,456.44 | $ 377,456.44 | 84% | $ 287,187.54 | $ 31,609.40 | $ 318,796.94 | $ 31,879.69 | $ 258,468.79 | $ 28,448.46 | 90,539.19 |
| 4 | City Lights | T | Site Electrical | $ - | $ 50,000.00 | $ 50,000.00 | 12% | $ 6,000.00 | $ - | $ 6,000.00 | $ 600.00 | $ 5,400.00 | $ - | 44,600.00 |
| 5 | MetroMex | E | Paving | $ - | $ 55,000.00 | $ 55,000.00 | 0% | $ - | $ - | $ - | $ - | $ - | $ - | 55,000.00 |
| 6 | Chrissy Weber | S | Landscaping | $ - | $ 63,269.50 | $ 63,269.50 | 0% | $ - | $ - | $ - | $ - | $ - | $ - | 63,269.50 |
| 7 | Klein Construction | U | Bike Racks | $ - | $ 1,730.50 | $ 1,730.50 | 100% | $ 1,730.50 | $ - | $ 1,730.50 | $ - | $ 1,730.50 | $ - | 63,269.50 |
| 8 | Gallagher Concrete | D | Concrete | $ - | $ 652,854.06 | $ 652,854.06 | 74% | $ 481,150.68 | $ - | $ 481,150.68 | $ 24,057.53 | $ 457,093.15 | 0.00 | 195,760.91 |
| 9 | Stonecast | D | Precast Concrete | $ - | $ 716,931.30 | $ 716,931.30 | 99% | $ 707,931.30 | $ - | $ 707,931.30 | $ 70,793.13 | $ 637,138.17 | $ - | 79,793.13 |
| 10 | Calvin Masonry | D | Masonry | $ - | $ 27,000.00 | $ 27,000.00 | 100% | $ 27,000.00 | $ - | $ 27,000.00 | $ 2,700.00 | $ 24,300.00 | $ - | 2,700.00 |
| 11 | Waukegan Steel | D | Structural Steel/Misc Iron | $ - | $ 1,113,923.00 | $ 1,113,923.00 | 100% | $ 1,089,283.00 | $ 24,640.00 | $ 1,113,923.00 | $ 111,392.30 | $ 980,354.70 | $ 22,176.00 | 111,392.30 |
| 12 | VEI | E | Curtainwall Systems | $ - | $ 490,000.00 | $ 490,000.00 | 3% | $ 16,000.00 | $ - | $ 16,000.00 | $ 1,600.00 | $ 14,400.00 | $ - | 475,600.00 |
| 13 | Phoenix Woodworking | S | Millwork | $ - | $ 5,500.00 | $ 5,500.00 | 0% | $ - | $ - | $ - | $ - | $ - | $ - | 5,500.00 |
| 14 | Bob's Waterproofing Sy | J | Damproofing/Waterproofing | $ - | $ 60,558.00 | $ 60,558.00 | 30% | $ 18,400.00 | $ - | $ 18,400.00 | $ 1,840.00 | $ 16,560.00 | $ - | 43,998.00 |
| 15 | Creative Panels | H | Insulated Metal Panels | $ - | $ 112,283.00 | $ 112,283.00 | 66% | $ 11,083.00 | $ 63,250.00 | $ 74,333.00 | $ 7,433.00 | $ 9,975.00 | $ 56,925.00 | 45,383.00 |
| 16 | Metal Master | D | Roofing & IMP's | $ - | $ 540,000.00 | $ 540,000.00 | 44% | $ 203,438.40 | $ 33,995.40 | $ 237,433.80 | $ 23,743.38 | $ 183,094.56 | $ 30,595.86 | 326,309.58 |
| 17 | Spray Insulations Inc. | D | Fireproofing | $ - | $ 120,000.00 | $ 120,000.00 | 41% | $ 12,000.00 | $ 36,800.00 | $ 48,800.00 | $ 4,880.00 | $ 10,800.00 | $ 33,120.00 | 76,080.00 |
| 18 | American Building Syst | D | HM Doors, Frames, Hardwa | $ - | $ 32,285.00 | $ 32,285.00 | 5% | $ 1,614.00 | $ - | $ 1,614.00 | $ 161.40 | $ 1,452.60 | $ - | 30,832.40 |
| 19 | Anagnos | S | Overhead Doors | $ - | $ 36,500.00 | $ 36,500.00 | 82% | $ 30,000.00 | $ - | $ 30,000.00 | $ 3,000.00 | $ 27,000.00 | $ - | 9,500.00 |
| 20 | Market Contracting | J | Drywall/Framing | $ - | $ 328,124.00 | $ 328,124.00 | 67% | $ 159,950.00 | $ 60,850.00 | $ 220,800.00 | $ 22,080.00 | $ 143,955.00 | $ 54,765.00 | 129,404.00 |

Revised 8/17/2009

DocuSign Envelope ID: D0DB7638-E60C-4ED9-95DA-534028E24F6A



**KLEIN** Construction

## General Conditions

High Bay Research Building
University of Chicago

| | | | | 8/13/2021 |
|---|---|---|---|---|
| University of Chicago Project Number | 20007 | | | Invoice # 1903-14 |
| University of Chicago Ledger 8 number | 8-81189 | | | |
| University of Chicago Contract Number | F845300 | | | Period ending 07/31/21 |

| Description | Original Value | Previously Billed | Current Due | Balance Remaining | Comments |
|---|---|---|---|---|---|
| Project Executive | $100,000.00 | $100,000.00 | $0.00 | $0.00 | 12 Months starting June 2020 |
| Project Manager | $164,250.00 | $150,000.00 | $8,000.00 | $6,250.00 | 12 Months starting June 2020 |
| Project Engineer | $26,500.00 | $25,000.00 | $750.00 | $750.00 | 10 Months starting August 2020 |
| Superintedent | $179,550.00 | $146,250.00 | $14,895.00 | $18,405.00 | 11 Months starting September 2020 |
| Labor By Trades | | | | | |
| Vehicles | $9,600.00 | $8,000.00 | $800.00 | $800.00 | 2 per mnth, 12 Months starting August 2020 |
| Telephones | $1,120.00 | $800.00 | $80.00 | $240.00 | 2 per mnth, 12 Months starting August 2020 |
| Autodesk | $6,000.00 | $6,000.00 | $0.00 | $0.00 | Lump Sum |
| Blueprints | $4,000.00 | $3,602.00 | $0.00 | $398.00 | By Order |
| Dumpsters | $6,950.00 | $6,083.09 | $75.00 | $791.91 | By Order |
| Job Site Trailer | $6,450.00 | $5,900.00 | $550.00 | $0.00 | Set up + $550/Month |
| Job Office Supplies | $1,000.00 | $760.00 | $0.00 | $240.00 | $100/Month |
| Temporary Bathroom | $2,600.00 | $2,600.00 | $0.00 | $0.00 | |
| Temporary Fencing | $8,400.00 | $8,400.00 | $0.00 | $0.00 | Lump Sum |
| Temporary Water | $500.00 | $338.99 | $45.00 | $116.01 | |
| Temporary Electric | $4,250.00 | $4,083.33 | $0.00 | $166.67 | |
| Jobsite Signage | $500.00 | $500.00 | $0.00 | $0.00 | |
| Materials & Tools | $8,987.00 | $8,364.46 | $0.00 | $622.54 | |
| | $530,657.00 | $476,681.87 | $25,195.00 | $28,780.13 | |

REMIT PAYMENT TO: P.O. Box 628328   Orlando, FL 32862-8328

# EXHIBIT D
# (Notices of Assignment)

# AMERIFACTORS®
## — FUNDING BUSINESS IS OUR BUSINESS® —

**SENT VIA: EMAIL TO AHERRING@UCHICAGO.EDU & FEDEX TRACKING # 9538 3327 2393**

**August 27, 2021**

**THE UNIVERSITY OF CHICAGO**
**ATTN: ANDREA HERRING/ ACCOUNTS PAYABLE SUPERVISOR**
**5801 S ELLIS AVE**
**CHICAGO, IL 60637**

**RE: GENERAL NOTICE OF ASSIGNMENT & STATEMENT**

Dear Accounts Payable Department Head,

In order to accommodate the changes and growth to our business, Klein Construction Ltd. has been fortunate to obtain the services of AmeriFactors, which will now serve as our accounts receivable management team. Please accept this letter as notification that all of Klein Construction Ltd. accounts and invoices have been irrevocably assigned to AmeriFactors. This assignment will remain in force unless and until you receive express written notification from AmeriFactors. Payment of the above referenced invoices and all future invoices due to Klein Construction Ltd. must be made payable to AmeriFactors, and must be mailed directly to:

| | | |
|---|---|---|
| **AmeriFactors** | | **ACH /Wire** |
| **P.O. Box 628328** | | **AmeriFactors Financial Group LLC.** |
| **Orlando, Florida 32862-8328** | **OR** | **BB&T Bank** |
| **Phone: (800) 884-3863** | | **ABA #**▮▮▮▮▮ |
| **Federal Tax ID#**▮▮▮▮▮ | | **Account #**▮▮▮▮▮ |
| | | **Ref: Invoice Number** |

Thank you for your business and your cooperation with this matter.

Sincerely,

*Hailee Ledford*

AmeriFactors
Hailee Ledford
**Vice President of Client Relations**

*Wayne J. Klein (signature)*

Klein Construction Ltd.
Wayne J. Klein
President

# AMERIFACTORS®

FUNDING BUSINESS IS OUR BUSINESS®

**SENT VIA: EMAIL TO AHERRING@UCHICAGO.EDU & FEDEX TRACKING # 9538 3327 2393**

**August 27, 2021**

**THE UNIVERSITY OF CHICAGO**
**ATTN: ANDREA HERRING/ ACCOUNTS PAYABLE SUPERVISOR**
**5801 S ELLIS AVE**
**CHICAGO, IL 60637**

**RE: ENCLOSED INVOICE(S): PAY APP 14 (INV.1903-14)**

Dear Sir/Madam:

In reliance upon your verification that the referenced invoice(s) from **KLEIN CONSTRUCTION LTD.** is due in full, AmeriFactors has purchased the invoice(s). **KLEIN CONSTRUCTION LTD.** has assigned all of its right in the account to AmeriFactors and we hereby submit the enclosed original invoice(s) for your records. Payment on the above referenced invoice(s) and on all invoices due to **KLEIN CONSTRUCTION LTD.** from this date forward, should be made payable to AmeriFactors and mailed directly to:

> **AmeriFactors Financial Group LLC**
> **PO Box 628328**
> **Orlando, FL 32862-8328**
> **BB&T Account #** █████████
> **ABA #** ████████
> **Federal Tax ID #** ████████
> **Phone: (800)884-3863**

Please call our office with any questions or concerns.

Thank you,

AmeriFactors

*Hailee Ledford*

Hailee Ledford
Vice-President of Client Relations

**Statement of Account As of August 27, 2021**

Please Remit All Payments To:

KLEIN CONSTRUCTION LTD
C/O AMERIFACTORS
P.O.BOX 628328
ORLANDO, FL 32862-8328

THE UNIVERSITY OF CHICAGO
5801 S. ELLIS AVE
CHICAGO, IL 60637
Attention: Accounts Payable

Invoices Were Purchased From:

KLEIN CONSTRUCTION LTD
15700 W 103RD ST SUITE 340
LEMONT, IL 60439

| Invoice# | Date | Amount | Age | Balance |
|---|---|---|---|---|
| 190314 PAY APP 14 | 7/31/2021 | 1,272,073.45 | 28 | 1,272,073.45 |
| | **Total Due** | | | **1,272,073.45** |

THIS INVOICE HAS BEEN SOLD
MAKE PAYMENT TO:
AMERIFACTORS - P. O. BOX 628328
ORLANDO, FL 32862-8328
PH: (407) 566-1150 FAX: (407) 566-1250
PAYMENTS MADE OTHER THAN TO THE
ABOVE WILL NOT CONSTITUTE PAYMENT

**\*\*PLEASE DO NOT ACCEPT ANY CHANGES IN OUR WIRE INSTRUCTIONS - BY EMAIL OR OTHERWISE -
WITHOUT CALLING US AT (407) 566-1150 TO VERIFY THE NEW INSTRUCTIONS\*\***

**ADDRESS QUESTIONS TO: CUSTOMERSERVICE@AMERIFACTORS.COM OR PHONE (407) 566-1150**



**KLEIN** Construction

P.O. Box 628328 • Orlando, FL 32862-8328

630.325.1000 • fax 630.325.2225
email: build@kleinconstruction.net
www.kleinconstruction.net

| **Bill To:** | **Invoice #1903-14** |
|---|---|
| The University of Chicago<br>5801 S. Ellis Avenue<br>Chicago, IL 60637 | Date                 8/13/2021<br>For the period ending<br>7/31/2021 |

| | |
|---|---|
| *University Project Manager* | Andrea Herring |
| *University of Chicago Project Number* | 20007 |
| *Project Location* | SW Corner of 56th and Maryland, Chicago, IL. 60637 |
| *University of Chicago Ledger 8 number* | 8-81189 |
| *University of Chicago Contract number* | F845300 |

Design Services for New High Bay Building - Contract Amount $ 609,800.00
Aproved Change Orders 2,4,6,7, 8,10,13, 14,18&19   $10,058,076.01   $ 10,667,876.01
*Billing Period*      6/01/21 - 7/31/21

*Submitted by*      Wayne Klein II       (630)202-4400, wklein@kleinconstruction.net

| Contractor | | Contract Amount | | This Invoice |
|---|---|---:|---|---:|
| **Klein Construction, Ltd.** | $ | 5,411,386 | $ | 95,398.88 |
| LEED Costs | $ | 17,637 | $ | - |
| Klein Permits and Fees | $ | 24,984 | $ | - |
| Groundcrew | $ | 46,800 | $ | - |
| Groundcrew | $ | 330,000 | $ | 31,609.40 |
| City Lights | $ | 6,000 | $ | - |
| Gallagher Concrete | $ | 648,000 | $ | - |
| Stonecast | $ | 715,000 | $ | - |
| Colvin | $ | 27,000 | $ | - |
| Waukegan Steel | $ | 1,070,000 | $ | 24,640.00 |
| VEI | $ | 490,000 | $ | - |
| Bofo Waterproofing Systems | $ | 45,400 | $ | - |
| Creative Panels | $ | 110,000 | $ | 63,250.00 |
| Metalmaster/Roofmaster | $ | 540,000 | $ | 33,995.40 |
| Spray Insulation | $ | 120,000 | $ | 36,800.00 |
| American Building Systems | $ | 32,285 | $ | - |
| Anagnos | $ | 36,500 | $ | - |
| Market Contracting | $ | 323,000 | $ | 60,850.00 |
| All Tech Decorating | $ | 95,000 | $ | 27,200.00 |
| Profasts | $ | 115,000 | $ | 58,000.00 |
| D.A.M Plumbing | $ | 330,000 | $ | 45,400.00 |
| McCauley Mechanical | $ | 1,813,400 | $ | 728,356.00 |
| Taylor Electric Company | $ | 881,000 | $ | 185,034.00 |
| Sievert Crane | $ | 273,300 | $ | 13,665.00 |
| Hardt Electric | $ | 12,000 | $ | - |
| Pro-Bel | $ | 22,095 | $ | 9,155.00 |
| Less 10% Retention | | | $ | (141,280.23) |
| Net Due less Retention | | | $ | 1,272,073.45 |
| | | | | |
| Retention Reduction to 0 % | | | $ | - |
| | | | | |
| **Architrave, Ltd.** | $ | 249,500 | $ | - |
| LEED Silver Status | $ | 24,220 | $ | - |
| Utility Connection Redesign | $ | 14,630 | $ | - |
| Storm Retention Vault | $ | 2,452 | $ | - |
| **Terra Engineering, Ltd.** | $ | 36,000 | $ | - |
| LEED Costs | $ | 7,200 | $ | - |
| Utility Connection Redesign | $ | 9,600 | $ | - |
| **David Mason & Assoc.** | $ | 56,100 | $ | - |
| LEED Costs | $ | 6,000 | $ | - |
| Utility Connection Redesign | $ | 3,100 | $ | - |
| Storm Retention Vault | $ | 9,300 | $ | - |
| **dbHMS** | $ | 88,200 | $ | - |
| LEED Costs | $ | 50,000 | $ | - |
| Utility Connection Redesign | $ | 6,000 | $ | - |
| **HJKessler Associates,LEED Consultant** | $ | 34,000 | $ | - |
| Net Due This Invoice | | | $ | 1,272,073.45 |
| | | | | |
| | $ | 14,132,089 | | |
| Previously Paid | | | $ | 5,212,939.41 |
| | | | | |
| Balance to Spent    REMIT PAYMENT TO:  P.O. Box 628328   Orlando, FL 32862-8328 | | | $ | 4,182,863.15 |

DocuSign Envelope ID: D0DB7638-E60C-4ED9-95DA-534028E24F6A

# APPLICATION AND CERTIFICATION FOR PAYMENT

AIA DOCUMENT G702

PAGE ONE OF 1 PAGES

TO OWNER: The University of Chicago
5801 S. Ellis Avenue
Chicago, IL 60637

PROJECT: New High Bay Building

APPLICATION NO: 14

PERIOD TO: 07/31/21

Distribution to:
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR

FROM CONTRACTOR:
Klein Construction Ltd

P.O. Box 628328 • Orlando, FL 32862-8328

VIA ARCHITECT:

PROJECT NOS: 20007

CONTRACT FOR: New High Bay Building

CONTRACT DATE: 11/08/19

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM | $ | 609,800.00 |
| 2. Net change by Change Orders | $ | 10,058,076.01 |
| 3. CONTRACT SUM TO DATE (Line 1 ± 2) | $ | 10,667,876.01 |
| 4. TOTAL COMPLETED & STORED TO DATE (Column G on G703) | $ | 7,084,161.47 |
| 5. RETAINAGE: | | |
| a. 10 % of Completed Work (Column D + E on G703) | $ 599,148.61 | |
| b. % of Stored Material (Column F on G703) | $ | |
| Total Retainage (Lines 5a + 5b or Total in Column 1 of G703) | | 599,148.61 |
| 6. TOTAL EARNED LESS RETAINAGE (Line 4 Less Line 5 Total) | $ | 6,485,012.86 |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT (Line 6 from prior Certificate) | $ | 5,212,939.41 |
| 8. CURRENT PAYMENT DUE | $ | 1,272,073.45 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE (Line 3 less Line 6) | $ | 4,182,863.15 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $9,979,994.15 | $0.00 |
| Total approved this Month | $85,027.61 | $6,945.75 |
| TOTALS | $10,065,021.76 | $6,945.75 |
| NET CHANGES by Change Order | $10,058,076.01 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates ~~for Payment were issued and~~ payments received from the Owner, and that current ~~payment shown herein is now due.~~

CONTRACTOR:

By: _____  Date: 8-13-21

State of: Illinois          County of: DuPage
Subscribed and sworn to before me this 13th day of August, 2021
Notary Public: _____
My Commission expires: 12/5/2023

NOTARY PUBLIC - State of Illinois
OFFICIAL SEAL
DARRELL M. LUDGEN
Notary Public - State of Illinois
My Commission Expires
December 05, 2023

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . $ _____

(Attach explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)

ARCHITECT:

By: _____  Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 · APPLICATION AND CERTIFICATION FOR PAYMENT · 1992 EDITION · AIA · ©1992
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE, N.W., WASHINGTON, DC 20006-5292
Users may obtain validation of this document by requesting a completed AIA Document D401 – Certification of Document's Authenticity from the Licensee.

REMIT PAYMENT TO: P.O. Box 628328   Orlando, FL 32862-8328

DocuSign Envelope ID: D0DB7638-E60C-4ED9-95DA-534028E24F6A

**Sworn Statement**

THE UNIVERSITY OF **CHICAGO**

| Project Title: | New High Bay |
| --- | --- |
| Contractor Name: | Klein Construction Ltd |
| Contract #: | F845300 |
| Job Location: | SW Corner of 56th & Maryland, Chicago, IL. |

Service Period From: 06/01/21 To: 07/31/21

Application For Payment #: 14

| | | | | 1 | 2 | 3 | 4 | | 5 | 6 | 7 | 8 | 9 — Billing — | 10 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Work Code | Sub-Contractor | MBE/WBE Code | Description of Work | Original Contract (Scheduled Value) | Change Orders | Total Contract (1+2 = 3) | % Complete | Previous Work Completed | Current Work Completed | Total Work Completed | Retainage | Previous Billings | Current Amount Due (6-7-8 = 9) | Remaining To Bill (3-6+9 = 10) |
| 1 | Architrave Ltd. | J/S | Architectural Design | $ 429,800.00 | $ 176,678.05 | $ 606,478.05 | 96% | $ 585,171.93 | $ - | $ 585,171.93 | $ - | $ 585,171.93 | $ - | $ 21,306.12 |
| 2 | Ground Crew Excavati | D | House Demolition | $ 46,800.00 | $ - | $ 46,800.00 | 100% | $ 46,800.00 | $ - | $ 46,800.00 | $ - | $ 46,800.00 | $ - | $ - |
| 3 | Ground Crew Excavati | D | Excavation/Site Utilities | $ - | $ 377,456.44 | $ 377,456.44 | 84% | $ 287,187.54 | $ 31,609.40 | $ 318,796.94 | $ 31,879.69 | $ 258,468.79 | $ 28,448.46 | $ 90,539.19 |
| 4 | City Lights | T | Site Electrical | $ - | $ 50,000.00 | $ 50,000.00 | 12% | $ 6,000.00 | $ - | $ 6,000.00 | $ 600.00 | $ 5,400.00 | $ - | $ 44,600.00 |
| 5 | MetroMax | E | Paving | $ - | $ 55,000.00 | $ 55,000.00 | 0% | $ - | $ - | $ - | $ - | $ - | $ - | $ 55,000.00 |
| 6 | Chrissy Weber | S | Landscaping | $ - | $ 63,269.50 | $ 63,269.50 | 0% | $ - | $ - | $ - | $ - | $ - | $ - | $ 63,269.50 |
| 7 | Klein Construction | U | Bike Racks | $ - | $ 1,730.50 | $ 1,730.50 | 100% | $ 1,730.50 | $ - | $ 1,730.50 | $ - | $ 1,730.50 | $ - | $ - |
| 8 | Gallagher Concrete | D | Concrete | $ - | $ 652,854.06 | $ 652,854.06 | 74% | $ 481,150.68 | $ - | $ 481,150.68 | $ 24,057.53 | $ 457,093.15 | 0.00 | $ 195,760.91 |
| 9 | Stonecast | D | Precast Concrete | $ - | $ 716,931.30 | $ 716,931.30 | 99% | $ 707,931.30 | $ - | $ 707,931.30 | $ 70,793.13 | $ 637,138.17 | $ - | $ 79,793.13 |
| 10 | Calvin Masonry | D | Masonry | $ - | $ 27,000.00 | $ 27,000.00 | 100% | $ 27,000.00 | $ - | $ 27,000.00 | $ 2,700.00 | $ 24,300.00 | $ - | $ 2,700.00 |
| 11 | Waukegan Steel | D | Structural Steel/Misc Iron | $ - | $ 1,113,923.00 | $ 1,113,923.00 | 100% | $ 1,089,283.00 | $ 24,640.00 | $ 1,113,923.00 | $ 111,392.30 | $ 980,354.70 | $ 22,176.00 | $ 111,392.30 |
| 12 | VEI | E | Curtainwall Systems | $ - | $ 490,000.00 | $ 490,000.00 | 3% | $ 16,000.00 | $ - | $ 16,000.00 | $ 1,600.00 | $ 14,400.00 | $ - | $ 475,600.00 |
| 13 | Phoenix Woodworking | S | Millwork | $ - | $ 5,500.00 | $ 5,500.00 | 0% | $ - | $ - | $ - | $ - | $ - | $ - | $ 5,500.00 |
| 14 | Bofo Waterproofing Sy | J | Damproofing/Waterproofing | $ - | $ 60,558.00 | $ 60,558.00 | 30% | $ 18,400.00 | $ - | $ 18,400.00 | $ 1,840.00 | $ 16,560.00 | $ - | $ 43,998.00 |
| 15 | Creative Panels | H | Insulated Metal Panels | $ - | $ 112,283.00 | $ 112,283.00 | 66% | $ 11,083.00 | $ 63,250.00 | $ 74,333.00 | $ 7,433.00 | $ 9,975.00 | $ 56,925.00 | $ 45,383.00 |
| 16 | Metal Master | D | Roofing & IMP's | $ - | $ 540,000.00 | $ 540,000.00 | 44% | $ 203,438.40 | $ 33,995.40 | $ 237,433.80 | $ 23,743.38 | $ 183,094.56 | $ 30,595.86 | $ 326,309.58 |
| 17 | Spray Insulations Inc. | D | Fireproofing | $ - | $ 120,000.00 | $ 120,000.00 | 41% | $ 12,000.00 | $ 36,800.00 | $ 48,800.00 | $ 4,880.00 | $ 10,800.00 | $ 33,120.00 | $ 76,080.00 |
| 18 | American Building Syst | D | HM Doors, Frames, Hardwa | $ - | $ 32,285.00 | $ 32,285.00 | 5% | $ 1,614.00 | $ - | $ 1,614.00 | $ 161.40 | $ 1,452.60 | $ - | $ 30,832.40 |
| 19 | Anagnos | S | Overhead Doors | $ - | $ 36,500.00 | $ 36,500.00 | 82% | $ 30,000.00 | $ - | $ 30,000.00 | $ 3,000.00 | $ 27,000.00 | $ - | $ 9,500.00 |
| 20 | Market Contracting | J | Drywall/Framing | $ - | $ 328,124.00 | $ 328,124.00 | 67% | $ 159,950.00 | $ 60,850.00 | $ 220,800.00 | $ 22,080.00 | $ 143,955.00 | $ 54,765.00 | $ 129,404.00 |

Revised 8/17/2009

REMIT PAYMENT TO: P.O. Box 628328    Orlando, FL 32362-8328

DocuSign Envelope ID: D0DB7638-E60C-4ED9-95DA-534028E24F6A

| Work Code | Sub-Contractor | Description of Work | MBE/WBE Code | Original Contract (Scheduled Value) (1) | Change Orders (2) | Total Contract (1+2=3) | % Complete | Previous Work Completed | Current Work Completed | Total Work Completed (6) | Retainage (7) | Previous Billings (8) | Current Amount Due (6-7-8=9) | Remaining To Bill (3-8-9=10) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21 | Floor & Wall Inc. | Flooring | S | | 35,000.00 | 35,000.00 | 0% | - | - | - | - | - | - | 35,000.00 |
| 22 | All Tech Decorating | Painting | D | | 95,000.00 | 95,000.00 | 29% | - | 27,200.00 | 27,200.00 | 2,720.00 | - | 24,480.00 | 70,520.00 |
| 23 | Commercial Specialties | Fire Protection Specialties | V | | 621.00 | 621.00 | 0% | - | - | - | - | - | - | 621.00 |
| 24 | Commercial Specialties | Bath Accessories | I | | 2,773.00 | 2,773.00 | 0% | - | - | - | - | - | - | 2,773.00 |
| 25 | ED 12 | Window Treatments | S | | 5,715.00 | 5,715.00 | 0% | - | - | - | - | - | - | 5,715.00 |
| 26 | Protec | Fire Supression | J | | 115,000.00 | 115,000.00 | 91% | 47,000.00 | 58,000.00 | 105,000.00 | 10,500.00 | 42,300.00 | 52,200.00 | 20,500.00 |
| 27 | D.AM Plumbing | Plumbing | | | 341,758.00 | 341,758.00 | 91% | 264,600.00 | 45,400.00 | 310,000.00 | 31,000.00 | 238,140.00 | 40,860.00 | 62,758.00 |
| 28 | McCauley Mechanical | HVAC & Controls | N | | 1,813,400.00 | 1,813,400.00 | 60% | 360,100.00 | 728,356.00 | 1,088,456.00 | 108,845.60 | 324,090.00 | 655,520.40 | 833,789.60 |
| 29 | Taylor Electric | Electric & Low Voltage | R | | 883,997.61 | 883,997.61 | 47% | 234,237.60 | 185,034.00 | 419,271.60 | 41,927.16 | 210,813.84 | 166,530.60 | 506,563.17 |
| 30 | Peerless Fence | Ornamental Fences & Gates | S | | 29,000.00 | 29,000.00 | 0% | - | - | - | - | - | - | 29,000.00 |
| 31 | Driven Fence | Chainlink Fence & Gates | S | | 6,000.00 | 6,000.00 | 0% | - | - | - | - | - | - | 6,000.00 |
| 32 | Sievert Cranes | Overhead Cranes | D | | 273,300.00 | 273,300.00 | 5% | - | 13,665.00 | 13,665.00 | 1,366.50 | - | 12,298.50 | 261,001.50 |
| 33 | Hardt Electric | PV Panels | V | | 12,000.00 | 12,000.00 | 100% | 12,000.00 | - | 12,000.00 | 1,200.00 | 10,800.00 | - | 1,200.00 |
| 34 | Klein Construction | Manholes/Covers | V | | 2,167.73 | 2,167.73 | 100% | 2,167.73 | - | 2,167.73 | - | 2,167.73 | - | |
| 35 | Pro-Bel USA | Window Washing Safety Equip | | | 22,095.00 | 22,095.00 | 41% | - | 9,155.00 | 9,155.00 | 915.50 | - | 8,239.50 | 13,855.50 |
| 36 | Klein Construction | Contingency | V | | 98,441.18 | 98,441.18 | 0% | - | - | - | - | - | - | 98,441.18 |
| 36 | Klein Construction | General Conditions | V | | 530,657.00 | 530,657.00 | 95% | 476,881.87 | 25,195.00 | 501,876.87 | 50,187.69 | 429,013.68 | 22,675.50 | 78,967.82 |
| 37 | Klein Construction | Permits & Fees | V | | 24,984.40 | 24,984.40 | 100% | 24,984.40 | - | 24,984.40 | - | 24,984.40 | - | |
| 38 | Klein Construction | Insurance | V | | 92,727.45 | 92,727.45 | 100% | 91,953.00 | 551.45 | 92,504.45 | 9,195.30 | 82,757.70 | 551.45 | 9,418.30 |
| 39 | Klein Construction | Buyout Savings | V | | 130,348.76 | 130,348.76 | 0% | - | - | - | - | - | - | 130,348.76 |
| 40 | Klein Construction | Overhead & Fee | V | | 525,596.03 | 525,596.03 | 67% | 281,651.84 | 69,652.43 | 351,304.27 | 35,130.43 | 253,486.66 | 62,687.18 | 209,422.19 |
| 41 | Klein Construction Ltd | Pre Construction / Design F | V | 180,000.00 | 10,691.00 | 190,691.00 | 100% | 190,691.00 | - | 190,691.00 | - | 190,691.00 | - | |
| | | | | 609,800.00 | 10,058,076.01 | 10,667,876.01 | 66% | 5,670,907.79 | 1,413,353.68 | 7,084,161.47 | 599,148.61 | 5,212,939.41 | 1,272,073.45 | 4,182,863.15 |

AMOUNT OF ORIGINAL CONTRACT    $  609,800.00
EXTRAS TO CONTRACT (CHANGE ORDERS)   $10,085,021.76
TOTAL CONTRACT AND EXTRAS   $10,674,821.76
CREDITS TO CONTRACT (CHANGE ORDERS)   $6,945.75
ADJUSTED TOTAL CONTRACT   $10,667,876.01

$ 10,667,876.01

WORK COMPLETED TO DATE (Col. 6)   7,084,161.47
TOTAL RETAINED (Col. 7)   599,148.61
NET AMOUNT EARNED (Col. 6 - Col. 7)   6,485,012.86
PREVIOUSLY PAID (Col. 8)   5,212,939.41
NET AMOUNT DUE THIS PAYMENT (Col.9)   1,272,073.45

STATE OF ILLINOIS
COUNTY OF COOK

The undersigned Wayne Klein II being duly sworn, on oath deposes and says that he/she is President for the Klein Construction Ltd. contractor for the General Construction of the following project:

PROJECT TITLE: New High Bay

PROJECT ADDRESS: SW Corner of 56th & Maryland, Chicago, IL 60637

That, for the purpose of this work the foregoing orders have been placed and the foregoing parties subcontracted with, and these have furnished materials or have provided labor, or both for the said project.
That, the amount of the contract or subcontract is due above and that all due to the amounts set opposite their names on the account are for materials or labor or both.
That, this statement is made in compliance with the statutes relating to Mechanics Liens and for the purpose of procuring from the Owner FINAL/PARTIAL payment in accordance with its terms of the contract and is a full, true and complete statement, of all parties furnishing labor and/or material, and of amounts paid, due and to become due them.

Subscribed and sworn to before me this ___ day of ___ 2021

Signed By:
Name/Title:

Notary Public

LUTGEN
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires
December 05, 2023

REMIT PAYMENT TO: P.O. Box 628328   Orlando, FL 32862-8328

Revised 4/17/2009

DocuSign Envelope ID: D0DB7638-E60C-4ED9-95DA-534028E24F6A



**KLEIN** Construction

**General Conditions**

High Bay Research Building
University of Chicago

| | | | | | 8/13/2021 |
|---|---|---|---|---|---|
| University of Chicago Project Number | | | 20007 | | Invoice # 1903-14 |
| University of Chicago Ledger 8 number | | | 8-81189 | | |
| University of Chicago Contract Number | | | F845300 | | Period ending 07/31/21 |

| Description | Original Value | Previously Billed | Current Due | Balance Remaining | Comments |
|---|---|---|---|---|---|
| Project Executive | $100,000.00 | $100,000.00 | $0.00 | $0.00 | 12 Months starting June 2020 |
| Project Manager | $164,250.00 | $150,000.00 | $8,000.00 | $6,250.00 | 12 Months starting June 2020 |
| Project Engineer | $26,500.00 | $25,000.00 | $750.00 | $750.00 | 10 Months starting August 2020 |
| Superintedent | $179,550.00 | $146,250.00 | $14,895.00 | $18,405.00 | 11 Months starting September 2020 |
| Labor By Trades | | | | | |
| Vehicles | $9,600.00 | $8,000.00 | $800.00 | $800.00 | 2 per mnth, 12 Months starting August 2020 |
| Telephones | $1,120.00 | $800.00 | $80.00 | $240.00 | 2 per mnth, 12 Months starting August 2020 |
| Autodesk | $6,000.00 | $6,000.00 | $0.00 | $0.00 | Lump Sum |
| Blueprints | $4,000.00 | $3,602.00 | $0.00 | $398.00 | By Order |
| Dumpsters | $6,950.00 | $6,083.09 | $75.00 | $791.91 | By Order |
| Job Site Trailer | $6,450.00 | $5,900.00 | $550.00 | $0.00 | Set up + $550/Month |
| Job Office Supplies | $1,000.00 | $760.00 | $0.00 | $240.00 | $100/Month |
| Temporary Bathroom | $2,600.00 | $2,600.00 | $0.00 | $0.00 | |
| Temporary Fencing | $8,400.00 | $8,400.00 | $0.00 | $0.00 | Lump Sum |
| Temporary Water | $500.00 | $338.99 | $45.00 | $116.01 | |
| Temporary Electric | $4,250.00 | $4,083.33 | $0.00 | $166.67 | |
| Jobsite Signage | $500.00 | $500.00 | $0.00 | $0.00 | |
| Materials & Tools | $8,987.00 | $8,364.46 | $0.00 | $622.54 | |
| | $530,657.00 | $476,681.87 | $25,195.00 | $28,780.13 | |

REMIT PAYMENT TO: P.O. Box 628328   Orlando, FL 32862-8328