IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERIFACTORS FINANCIAL GROUP, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 21 C 6803 |
| UNIVERSITY OF CHICAGO, | ) Judge Joan H. Lefkow |
| Defendant. | ) |

**OPINION AND ORDER**

AmeriFactors Financial Group, LLC filed this action against the University of Chicago, seeking to recover money allegedly owed under an agreement. The University has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 34.) For the reasons below, the motion is granted.

**BACKGROUND**

On November 8, 2019, the University entered into a construction agreement with Klein Construction, Ltd., to design and build a new campus building. In turn, Klein subcontracted with other companies for materials, labor, equipment, and other services necessary for the project. The construction agreement enabled the University to pay the subcontractors directly through a joint check to the subcontractors and Klein if the University learned that Klein had not paid the subcontractors on time.

On July 9, 2021, Klein and AmeriFactors entered into a factoring agreement, a form of assignment that refers to the purchase of a company's accounts receivable. AmeriFactors purchased Klein's accounts receivable, including its accounts with the University. Pursuant to this agreement, Klein assigned to AmeriFactors Invoice 14 (dkt. 29-4).

Klein sent Invoice 14 to the University on August 13, 2021, for work completed between June and July 2021. Invoice 14 shows an outstanding balance of $1,272,073.45. The vast majority of this total ($1,176,674.57) was due for work completed by subcontractors, with only $95,393.88 apportioned to Klein itself. (Dkt. 29-4 at 2). At a time not alleged (and, according to counsel at oral argument, not known to AmeriFactors), the University directly paid the subcontractors what they were owed on Invoice 14. (Dkt. 29, ¶ 66). Whether Klein was paid is not alleged.

On August 26, 2021, AmeriFactors emailed a letter to the University, which reads:

> **KLEIN CONSTRUCTION LTD.** wishes to assign Payment Application #14[.] Please review the attached payment application(s) and sign below to verify that all work has been completed and/or services performed as shown on the payment application(s), that the amount stated on the payment application(s) will be paid by your office, that there are no disputes, claims of offset, credits owed, prior payments, discounts, or any other matters that you contend reduces your obligation to pay the full amount of the payment application(s), and that you waive your right to assert any defense to payment of the payment application(s). In the event of a dispute related to this transaction, the prevailing party shall be entitled to recover its reasonable fees and costs.
>
> We/I further confirm that the total amount shown on the payment application(s) will be paid within 60 (sixty) days to AmeriFactors … and shall constitute an agreement not to assert defenses or claims against payment pursuant to the Uniform Commercial Code.

(Dkt. 29-5).

A University employee signed the document on August 27, 2021, and returned it to AmeriFactors without indicating that it had a credit, offset, or prior payment to the subcontractors. Also on August 27, AmeriFactors and Klein sent a document notifying the University of the completed assignment, which included a copy of Invoice 14. The notice states that AmeriFactors "will now serve as [Klein's] accounts receivable management team," that all of Klein's accounts and invoices were assigned to AmeriFactors, and that payment for Invoice

2

14 and all future invoices must go to AmeriFactors instead of Klein. (Dkt. 29-6 at 1.)

On September 17, 2021, Klein sent the University another invoice (Invoice 15) for work completed in August 2021. Invoice 15 reflects an outstanding balance of $858,325.08, with $18,124.92 due to Klein and the remainder due to various subcontractors. (Dkt. 29-7.) The Invoice also indicates that the University had already paid over $6,000,000 in connection with the construction project, although it did not specify to whom or when this money was paid.

On October 7, 2021, AmeriFactors sent the University a second notice of assignment reiterating that all of Klein's accounts had been assigned to it. (Dkt. 29-8.) Less than two weeks later, on October 19, 2021, AmeriFactors filed an action against the University to recover the balances reflected on Invoices 14 and 15. (Dkt. 1-1.)[1]

On November 5, 2021, AmeriFactors sent a document titled "Notice of Default by Klein Construction" to the University, stating that Klein "defaulted under the terms of its Agreement with AmeriFactors" and that AmeriFactors was owed $1,272,073.45. (Dkt. 29-9.) In short, whether or not the University had paid the subcontractors what Klein owed them, AmeriFactors alleges that it is entitled to the entire amounts of Invoices 14 and 15 (respectively valued at $1,272,073.45 and $859,325.08), rather than the amounts of those invoices ($95,393.88 and $18,124.92, respectively) that the University actually owed to Klein.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. In ruling on 12(b)(6) motions, the court accepts as true

---

[1] The action was initially filed in Florida state court. The University removed the case to federal court in Florida under 28 U.S.C. § 1441, and both parties agreed to transfer the case to the Northern District of Illinois under 28 U.S.C. § 1404(a). (Dkt. 10.) This Court has subject matter jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship and an amount in controversy over $75,000. Venue is proper under 28 U.S.C. § 1391.

all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *See Taha* v. *Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). And the court considers documents attached to the complaint as incorporated therein. Fed. R. Civ. P. 10(c); *see Williamson* v. *Curran*, 714 F.3d 432, 436 (7th Cir. 2013). To survive dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ANALYSIS

AmeriFactors' second amended complaint makes seven claims, all based on the outstanding amounts reflected on Invoices 14 and 15: (I) breach of contract; (II) open account; (III) account stated; (IV) UCC 9-607 statutory lien and account debtor enforcement; (V) promissory estoppel; (VI) unjust enrichment; and (VII) conversion.[2]

**I.      Count I: Breach of Contract**

The University contends that the breach of contract claim fails because there was no consideration to support any alleged contract between it and AmeriFactors. A breach of contract claim requires the plaintiff to plausibly allege the existence of an offer, acceptance,

---

[2] As a preliminary matter, the University asserts that Illinois law should apply, but that it is equally entitled to dismissal under Florida law. Neither party has shown a conflict between Illinois and Florida law on any of the claims. As such, the court applies Illinois law, *see Sosa* v. *Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021), but refrains from making a definitive choice of law determination, *see Morrison* v. *YTB Intern., Inc.*, 649 F.3d 533, 538 (7th Cir. 2021) (insufficient factual basis at Rule 12(b)(6) stage to make conclusive choice of applicable law).

consideration, definite terms, performance by the plaintiff, breach, and resulting damages. *See MC Baldwin Fin. Co.* v. *DiMaggio, Rosario & Veraja, LLC*, 845 N.E.2d 22, 30 (Ill. App. Ct. 2006). Consideration is a bargained-for exchange in which the promisor receives a benefit or the promisee suffers a detriment. *See JPMorgan Chase Bank, N.A.* v. *Asia Pulp & Paper Co.,* 707 F.3d 853, 866 (7th Cir. 2013) (citing *Vassilkovska* v. *Woodfield Nissan, Inc.,* 830 N.E.2d 619 (2005)).

AmeriFactors argues that the University's signature on the August 26 letter (an offer) created an enforceable contract (separate from the assignment) to pay the full balance of Invoice 14. First, it argues that the University received a benefit in that the funds AmeriFactors provided to Klein allowed it to continue the construction project. But since Klein had already contracted to do this work, its already-agreed-upon performance does not constitute consideration for a contract between AmeriFactors and the University. *See Sciarabba* v. *Chrysler Corp.*, 527 N.E.2d 368, 373 (Ill. App. Ct. 1988).

Even if the University did not receive a benefit, AmeriFactors contends that it incurred a detriment based on the August 26 letter because it would not have purchased Invoice 14 from Klein under the factoring agreement absent receipt of the signed letter from the University. *See* 810 Ill. Comp. Stat. 5/9-406(a) (account debtor obligated to pay assignee after effective notice). The letter, however, never mentions this; such a detriment can hardly be considered part of a *bargained-for* exchange where the University was not notified that AmeriFactors was relying on the letter in this way until after it had already provided the verification. (Dkt. 29, ¶¶ 19–23.) Nor has AmeriFactors cited authority supporting its assertion that its agreement with and payment to Klein constitute a legal detriment sufficient to show consideration for a separate contract with the University, particularly where Klein and AmeriFactors had entered into the

5

factoring agreement contemplating the assignment weeks earlier. In short, there is no enforceable contract between the University and AmeriFactors because there is no consideration.

Additionally, at oral argument, AmeriFactors stated that its claim rests on the underlying assignment between Klein and AmeriFactors. As the assignee of Invoice 14, AmeriFactors may look to the University only to enforce Klein's right to collect payment. *See Secura Ins.* v. *Phillips 66 Co.*, — N.E.2d — , 2022 WL 522753, at *6 (Ill. App. Ct. 2022) (following an assignment, assignee stands in the shoes of assignor). AmeriFactors cannot have greater rights or be owed more than Klein was owed. Yet nowhere in the complaint does AmeriFactors seek to enforce the rights owed to Klein; instead, its allegations focus on the rights it believes it has under the August 26 verification letter. As described above, this letter did not effectuate a valid agreement between the parties. Thus, while AmeriFactors may be entitled to some recovery from the University based on the assignment, absent allegations as to a breach of the underlying construction agreement from which its assigned rights flow, AmeriFactors fails to plausibly allege a breach of contract. Therefore, Count I is dismissed.

## II.     Count II: Open Account

The University next argues that AmeriFactors' open account claim should be dismissed because Illinois recognizes no such claim and, if Florida law applies, no open account claim can exist where there is a written contract.

While actions for open account under Illinois law are rare, to say the least, what little Illinois case law exists appears to show the same elements as exist under Florida law. *Compare Cavitt* v. *Davis*, 93 Ill. App. 519, 520, 1900 WL 3605 (2d Dist. 1901) (open account claims for unpaid debts between parties who performed services for each other), *with S. Motor Co. of Dade Cty.* v. *Accountable Constr. Co.*, 707 So.2d 909, 912 (Fla. App. Ct. 1998) (claim for open account based on "unsettled debt arising from items of work and labor"). Essentially, a plaintiff

6

may bring an action for open account based on an unpaid debt from a transaction, "the sole record of which is usually the account books of the owner of the demand." *H&H Design Builders, Inc.* v. *Travelers' Indem. Co.*, 639 So.2d 697, 700 (Fla. Dist. Ct. App. 1994). An action for open account does not lie where there is a contract "or other obligations that have been reduced to writing." *Id.*

Here, as an assignee, AmeriFactors' rights are governed by the construction agreement, which is attached to the complaint and incorporated therein. Thus, AmeriFactors' claim for open account fails because there was a written contract that set out the obligations between the University and Klein, from which AmeriFactors' right derive. Count II is dismissed.

### III. Count III: Account Stated

The University next argues that AmeriFactors cannot bring a claim for account stated because it fails to plausibly allege facts supporting the claim's elements. An account stated claim—another uncommon claim similar to breach of contract—may be brought where the parties had an ongoing relationship with repeated transactions for goods or services, but one party has not paid up despite an "express or implied" promise to do so. *McHugh* v. *Olsen*, 545 N.E.2d 379, 515 (Ill. App. Ct. 1989). A key aspect of the account stated claim is that the parties agree on the amount of the outstanding balance. *Id.*

An account stated claim is inapplicable here. The factual allegations and documents attached to the complaint show disagreement and confusion over the amount owed, if any. According to the construction agreement, the University may pay subcontractors directly, and Invoice 14 indicates that over $1,000,000 of the amount owed on that invoice was attributable to subcontractors. But the letter, which is silent on any obligations to the subcontractors, purportedly requires the University to pay the full amount of Invoice 14 to AmeriFactors. And there are no allegations or documents regarding payment for Invoice 15, which, again, could

7

have been made partly to the subcontractors pursuant to the construction agreement. Count III is therefore dismissed.

### IV. Count IV: UCC 9-607 Statutory Lien and Account Debtor Enforcement

The University next moves to dismiss AmeriFactors' claim to enforce rights under section 9-607 of the Uniform Commercial Code, arguing that the August 26 letter cannot serve as the basis for the claim. As codified by Illinois law, the UCC provides that, after a default, "a secured party may (1) notify an account debtor … to make payment or otherwise render performance to or for the benefit of the secured party; … [and] (3) may enforce the obligations of an account debtor[.]" 810 Ill. Comp. Stat. 5/9-607(a)(1), (a)(3).

The University argues that this statutory provision does not provide a private right of action allowing AmeriFactors to sue it as an account debtor. Even if it did, the University further argues, AmeriFactors cannot bring such a claim absent a default by Klein on a security agreement. AmeriFactors, the University notes, only vaguely references a default, stating that "[d]ue to [the University's] failure and refusal to pay AmeriFactors for amounts owed for … Invoice No. 14, events of default have occurred under the Factoring Agreement." (Dkt. 29, ¶ 141.)

As to the question of a right of action, AmeriFactors argues that "[b]oth secured creditors and assignees of contractual rights to payment may pursue collection against the account debtor under UCC 9-607" and it cites numerous cases that purportedly support this assertion. (Dkt. 35 at 7.) All of those cases are inapposite because they involve an assignee stepping into the assignor's shoes to enforce an underlying agreement breached by the account debtor. This is not what AmeriFactors seeks to do here. Instead, it alleges that the University failed to pay it the full balance of the invoice—above and beyond what Klein was entitled to—pursuant to the August 26 letter. AmeriFactors has cited no authority establishing such a right of action under section

9-607 separate from enforcement of the underlying contract, which it has not alleged was breached.

Moreover, AmeriFactors' theory of liability under 9-607 lacks coherence. First, there has to be a security agreement that becomes effective when a debtor defaults. AmeriFactors does not allege that Klein was in default. Nor is there any basis to infer that AmeriFactors lent money to Klein other than the allegation that it "advanced funds" to Klein, (Dkt. 29, ¶ 30). This, however, is directly contrary to the factoring agreement, which states that Klein "hereby sell[s] and assign[s]" its accounts receivable and that the parties "intend for each sale of an Account … to constitute a true sale of the Account and not as a loan." (Dkt. 29-1.) There is no allegation suggesting that the parties intended or executed anything other than a sale. And any allegation of a security interest is likewise inconsistent with AmeriFactors' allegation that Klein "sold and assigned" its interest in Invoice 14 to AmeriFactors. (Dkt. 29, ¶ 28.)

Therefore, Count IV is dismissed.

**V.     Count V: Promissory Estoppel**

The University seeks to dismiss the promissory estoppel claim on the grounds that it improperly alleges the existence of a contract. Promissory estoppel requires that a plaintiff allege that "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Janda* v. *U.S. Cellular Corp.*, 961 N.E.2d 425, 443 (Ill. App. Ct. 2011) (internal citation omitted). Promissory estoppel may be pleaded in the alternative to a breach of contract claim, but the claim fails where a contract governs the relationship between the parties. *See DeGeer* v. *Gillis*, 707 F. Supp. 2d 784, 797 (N.D. Ill. 2010).

The University argues that AmeriFactors cannot bring a claim for promissory estoppel because of UCC § 9-404(a), regarding rights acquired by and defenses against the assignee. The

9

relevant part of the provision states: "Unless an account debtor has made an enforceable agreement not to assert defenses or claims … the rights of an assignee are subject to: (1) all terms of the agreement between the account debtor and assignor[.]" 810 Ill. Comp. Stat. 5/9-404(a)(1). In other words, the University retains all of its rights under the construction agreement absent a separate contract with AmeriFactors to the contrary.

Under the construction agreement, the University was entitled to pay the subcontractors directly, and it indeed did so. Thus, under § 9-404(a), AmeriFactors cannot state a promissory estoppel claim premised on the University's exercise of this pre-existing contractual right because, to do so, it has to allege a contract between itself and the University altering the University's rights under the construction agreement, and the existence of such a contract precludes a promissory estoppel claim. Therefore, Count V is dismissed.

## VI. Count VI: Unjust Enrichment

The University likewise moves to dismiss the unjust enrichment claim grounded in a contract implied in law because an express contract exists.

In Illinois, unjust enrichment is not a stand-alone cause of action but may be brought based on an underlying theory of recovery, such as a contract implied in law, where a party has unjustly retained a benefit to which it is not entitled. *See C. Szabo Contracting, Inc.* v. *Lorig Const. Co.*, 19 N.E.3d 638, 644 (Ill. App. Ct. 2014). A contract implied in law "is grounded in an implied promise by the recipient of services or goods to pay for something of value which it has received." *Restore Constr. Co.* v. *Bd. of Educ. of Proviso Twp. High Schs. Dist. 209*, 133 N.E.3d 71, 79 (Ill. App. Ct. 2019) *aff'd* 164 N.E.3d 1238 (Ill. 2020). "[I]f an express contract exists between the parties concerning the same subject matter, a party cannot assert a claim on a contract implied in law." *Schroeder* v. *Sullivan*, 104 N.E.3d 460, 472 (Ill. App. Ct. 2018).

As described above, express contracts govern the relationship between AmeriFactors and

10

the University, precluding an unjust enrichment claim premised on an implied-in-law contract. Moreover, unjust enrichment is not a fit for the situation alleged. The recipient of services in this case was the University. There is no allegation that it retained the funds owed, instead paying them to the subcontractors as it was entitled to do under the construction agreement. As such, the University was not unjustly enriched to the detriment of the service provider Klein, in whose shoes AmeriFactors stands. Accordingly, Count VI is dismissed.

**VII.   Count VII: Conversion**

Last, the University argues that AmeriFactors cannot state a claim for conversion based on its alleged failure to pay the balance of Invoice 14. To state a claim for conversion, the plaintiff must plead: (1) it has a right to the property and the immediate possession of it; (2) the defendant wrongfully assumed control or ownership of the property without permission; and (3) the plaintiff made a demand for the property, which the defendant refused. *See Wesberger* v. *Wesberger*, 954 N.E.2d 282, 289 (Ill. App. Ct. 2011). A conversion claim may be made for money if it is a "specific chattel," but not where the plaintiff seeks "to satisfy a mere obligation to pay money." *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985).

Although AmeriFactors seeks immediate possession of the outstanding balance of Invoice 14, conversion is an inapt theory of recovery because AmeriFactors has not alleged that the University wrongfully assumed control or ownership of the balance, *i.e.*, that the University was entrusted with specific funds but misappropriated them. *See Bill Marek's the Competitive Edge, Inc.* v. *Mickelson Grp., Inc.*, 806 N.E.2d 280, 286 (Ill. App. Ct. 2004). AmeriFactors simply alleges that the University has not paid a bill on time. Therefore, Count VII is dismissed.

## **CONCLUSION AND ORDER**

The University's motion to dismiss (dkt. 34) is granted. Counts II, III, V, VI, and VII are dismissed with prejudice. Counts I and IV are dismissed without prejudice. AmeriFactors is given leave until 08/25/2022 to replead if it can do so consistently with Rule 11.

Date: August 3, 2022

_____
U.S. District Judge Joan H. Lefkow